VIRGINIA A. MORRISON

*v.*

MARY MORRISON *et al.*

*Filed at Springfield March 26, 1892.*

1. UNRECORDED DEED—*recorded mortgage—putting purchaser on inquiry.* The record of a mortgage or deed of trust on part of a tract of land, from a son, securing a note of his father, although the records may show title to the whole in the father, is sufficient to put a purchaser from the father on inquiry as to any unrecorded deed from the father to the son.

2. SAME—*possession notice of title.* The actual occupancy of land, as notice, is equal to the record of the deed under which the occupant claims, and a purchaser is bound to inquire by what right or title he holds, and will take subject to that title or interest, whatever it may be.

3. SAME—*infants in possession—effect of statements by mother or grandfather.* Where infants are in the possession of land inherited from their father, which is rented and managed by their mother and grandfather, no acts or statements made by such mother or grandfather can be allowed for the purpose of affecting or depriving infant owners of their title.

4. CHANCERY PRACTICE—*right to file cross-bill.* A father, after conveying a half section of land to his son, who took and retained the possession, mortgaged the same and other lands to secure a debt. He released one of the quarters conveyed to the son, in the mortgagee's name, which he then conveyed to a daughter, and afterward made a deed for the other quarter to the heirs of such son, who was then dead, the first deed being lost. The mortgagor died, and his widow bought the mortgage and notes and sought to foreclose the same, alleging in her bill the release as to one tract, but praying for the sale of the mortgaged premises. The infant heirs of the deceased son answered by guardian *ad litem*, and filed their cross-bill, showing the making of a prior unrecorded deed by the mortgagor, and seeking to set aside the mortgage and the deed to the mortgagee's daughter as a cloud on their title: *Held*, that as the cross-bill sought only equitable relief to the whole half section, the court properly allowed the same to be filed.

5. A court of equity abhors a multiplicity of suits, and whenever it has jurisdiction of a subject matter and of the parties in interest, it seeks to do complete justice. Therefore a defendant has a right to file a cross-bill, and state new facts connected with the subject matter of the original bill.

6. Witness—*competency of parties in foreclosure against heirs.* Where the holder of notes secured by mortgage seeks to foreclose the same on land claimed by the occupants as heirs, he will be incompetent to testify as a witness in the case against such heirs; and so is one attempting to assert rights against them as purchaser of a part of lands claimed by them, as a purchaser for value, and without notice of their equities.

Writ of Error to the Circuit Court of Christian county; the Hon. J. Fouke, Judge, presiding.

Mr. John G. Drennan, for the plaintiff in error:

The cross-bill could not be maintained because the original bill did not embrace the subject matter of the north-west quarter of section 9, and because a court of law is the proper forum to adjudicate legal titles. *Gage* v. *Mayer*, 117 Ill. 639; *Parker* v. *Shannon*, 114 id. 192; *Tobey* v. *Foreman*, 79 id. 491; *Akin* v. *Cassiday*, 105 id. 24; Story's Eq. Pl. secs. 629, 398.

If there was a prior deed in existence, plaintiff in error was a purchaser for a valuable consideration, without notice. *How* v. *Mortell*, 28 Ill. 478.

If the lost deed was made, the evidence fails to show that plaintiff in error had any actual notice of it when she purchased. Claims of this character must be sustained by clear and convincing evidence. *Bennett* v. *Waller*, 23 Ill. 104; *Rankin* v. *Crow*, 19 id. 629.

Defendant in error is a purchaser in good faith, for value, and without notice of the claim of plaintiff in error, for the possession of plaintiff in error during her father's lifetime is not shown to have been of that exclusive character not in subordination to her father's ownership. *Stone* v. *Cook*, 79 Ill. 424; Wade on Notice, secs. 302, 303.

In *Jackson* v. *Berner*, 48 Ill. 208, the court say: "Adverse possession was not made out by inference, but by clear and positive proof, and the possession must be such as to show clearly that the party claims the land as his own, openly and exclusively."

Actual or constructive notice of an unrecorded deed must be brought home to the party sought to be affected by it. Wade on Notice, secs. 231, 236, 245; Tiedeman on Real Prop. sec. 819; *Bogue* v. *Williams*, 48 Ill. 371.

The true test of a witness' competency. is, will he gain or lose anything in the result of the suit. *McClure* v. *Otrich*, 118 Ill. 320.

In this cross-bill, Alma and Mary Morrison do not sue as the heirs of anybody. They sue in their own right, claiming title to the land. They claim to have derived title through their father, but that does not make one wherein they sue as heirs. *Pigg* v. *Carroll*, 89 Ill. 205.

Mr. A. THORNTON, and Messrs. RICKS, & CREIGHTON, for the defendants in error:

The cross-bill was proper, as chancery takes jurisdiction of subject matter. *Bennett* v. *Walker*, 23 Ill. 97; *Jones* v. *Smith*, 14 id. 228; *Lloyd* v. *Kirkwood*, 112 id. 331.

It is not necessary that all the facts appear in the original bill to show that defendants in error are entitled to the relief sought. *Robins* v. *Swain*, 68 Ill. 198; *Kennedy* v. *Kennedy*, 66 id. 190; *Davis* v. *Christian Union*, 100 id. 313; *Quick* v. *Lemon*, 105 id. 578; *Lloyd* v. *Kirkwood*, 112 id. 331.

Mr. JUSTICE BAKER delivered the opinion of the Court:

The original bill in this cause was filed by Julia A. A. S. Morrison, to foreclose two mortgages. One of these mortgages was on the north half of section 5, township 11, north, range 3, west, in Christian county, Illinois, was executed May 21, 1878, by William E. Morrison, and was given to secure $5000 and interest. On December 27, 1878, said mortgagor conveyed said land, by quitclaim deed, to James L. D. Morrison, his father, who assumed the mortgage debt, and died seized of the equity of redemption. The other mortgage was on some nine hundred and thirty-seven acres of land, which was in the

same township and county, and included the west half of section 9, and said mortgage was given May 15, 1881, by said James L. D. Morrison, to secure $15,000 and interest. James L. D. Morrison died August 14, 1888, testate, and devised and bequeathed his property in four equal shares to his widow, the said Julia A. A. S. Morrison, and to his three daughters, Mary E. Carr, Adele L. M. Kelley and Virginia A. Morrison, (the last named daughter being the plaintiff in error herein,) and he disinherited his son William E. Morrison, and also Mary Morrison and Alma Morrison, only children of his deceased son, Eugene M. Morrison, who are defendants in error herein. Said Eugene M. had died intestate on July 4, 1881, and April 2, 1888, James L. D. Morrison made to defendants in error a quitclaim deed for the south-west quarter of the above mentioned section 9, which was recorded September 10, 1888, and on May 15, 1888, he made a deed for the north-west quarter of said section 9 to plaintiff in error.

In May, 1889, and about nine months after the death of Col. James L. D. Morrison, his widow, the said Julia A. A. S. Morrison, purchased both of the above mentioned mortgages, and the notes secured by them, paying therefor the amounts due thereon, and the same were assigned to her, and she thereupon filed the original bill as above stated. One of the mortgages sought to be foreclosed, and as described in the bill of complaint, included the whole of the west half of section 9. Among the statements in the bill was this: "Your oratrix further represents, that on the 28th day of May, A. D. 1888, the said Horatio M. Vandeveer, then the legal holder of said notes and mortgage deed executed by said James L. D. Morrison to said Charles Parsons, upon the payment of a large sum of money on said indebtedness, to-wit, $5000, released from the lien of said mortgage the north-west quarter of section 9 of the lands in said mortgage deed, by a release in writing, under his hand, on the margin of the record of said mortgage record 'Q,' on page 439 of the records in the re-

corder's office of said Christian county, special reference being made thereto for greater certainty." The prayer of the bill was, that "the said mortgaged property may be sold, as may be directed by this honorable court." The adult defendants answered said bill, and Mary and Alma Morrison, the infant defendants in error, by their guardian *ad litem*, filed an answer, the substance of which was, that James L. D. Morrison did not own the west half of section 9 at the time he executed the $15,000 mortgage; that prior thereto he had conveyed the same, by deed, to Eugene M. Morrison, who took possession of the land and built a house and barn and made other improvements thereon, and occupied the premises by himself and family, and that said deed was never placed on record; that said Eugene M. died intestate July 4, 1881, leaving them, said Mary and said Alma, as his only heirs-at-law, and leaving as his widow, Olivia Morrison, now Olivia Monegan, and that since said July 4, 1881, they and their mother, said Olivia, have occupied and been possessed of the whole of said west half of section 9, and have received the rents and profits thereof. Said answer also denied that there had been any valid or legal release from said mortgage of the north-west quarter of section 9, and insisted that if the mortgage ever became and was a valid lien on the west half of said section, then said north-west quarter was still subject to such lien, and must bear its share of the mortgage indebtedness.

Thereupon defendants in error, by their guardian *ad litem*, exhibited their cross-bill, in which were alleged substantially the same facts contained in their answer to the original bill. It was averred in said cross-bill that the deed for the west half of section 9, executed by James L. D. Morrison to his son Eugene M., had been lost, and after the most diligent search could not be found, and that said James L. D., for some seven or eight years prior to his death, was not of sound memory, and was very forgetful in regard to past transactions, and hence the deed made by him in May, 1888, to plaintiff in

error for the north-west quarter, and in April, 1888, to defendants in error for the south-west quarter of section 9 ; and it was also alleged in said cross-bill, that, excluding the west half of section 9, the remaining six hundred and seventeen acres of land embraced in the mortgage were ample security for the moneys due the complainant in the original bill. It was claimed in said cross-bill that the complainants therein were entitled to have a deed made to them by the heirs of James L. D. Morrison in place of their father's unrecorded deed which had been lost, and the prayer of said cross-bill prayed for a decree ordering the execution of such a deed, and decreeing that said west half of section 9 was free from and unincumbered by the mortgage of May 15, 1881. There was also a prayer for general relief.

Julia A. A. S. Morrison, complainant in the original bill, and Virginia A. Morrison, plaintiff in error, answered the cross-bill, and denied all its material averments. The other defendants to the cross-bill defaulted, and said bill was ordered to be taken as confessed by them. The cause was heard on the original and cross-bills and other pleadings, and the exhibits and proofs. The decree upon the original bill is not brought before us by this writ of error. In respect to the cross-bill the court, among other things, found that Eugene M. Morrison lived on said west half of section 9 with his family from 1876 until his death, in 1881, and cultivated and controlled the same, and received the rents and profits thereof, and had the open and uninterrupted use and possession of the same, and that since his death his widow and the defendants in error have had the visible and uninterrupted possession of said lands, and have continuously received the rents and profits thereof; that said Eugene M. Morrison had made improvements on said land of the value of several thousand dollars ; that James L. D. Morrison, and his wife, Julia A. A. S. Morrison, did in the year 1878 execute, acknowledge and deliver to said Eugene M. Morrison a good and valid deed conveying said land to

him; that said deed was never recorded, and that it has been lost, and after diligent search can not be found, and that said west half of section 9 is not subject to the mortgage of May 15, 1881, and that said mortgage is not a valid lien on said land, and ought to be removed as a cloud upon the title of the complainants in the cross-bill. It was decreed that the lien of said mortgage upon said west half of section 9 be removed, cancelled and for naught held; that the defendants in the cross-bill, (and in case of their default, the master in chancery,) convey said land by quitclaim deed to the complainants in the cross-bill, and that said deed be in place of the unrecorded and lost deed made by James L. D. Morrison, deceased. It was also decreed that the deed of May 15, 1888, made by James L. D. Morrison to Virginia A. Morrison for the north-west quarter of said section 9, be set aside and be declared null and void, and it was also decreed that the complainants in the cross-bill pay the costs of their cross-bill. Virginia A. Morrison, alone, sued out this writ of error, and assigns errors upon the record.

There are several questions in the case that are preliminary in their nature. It is claimed that the north-west quarter of section 9 was no part of the subject matter of the original bill, and that therefore the cross-bill should not have been entertained. One of the objects of the original bill was to foreclose the mortgage of 1881, and it appears from the allegations of said bill that said mortgage, when executed, covered the west half of said section 9, and other property. The statement was made in the bill that Vandeveer had released the north-west quarter of said section 9 from the lien of the mortgage "by a release in writing, under his hand, on the margin of the record of said mortgage." The prayer of the bill made no exception of said north-west quarter, but was, that "the said mortgaged property may be sold, as may be directed by this honorable court." This was a submission of the effect of the alleged release to the adjudication of the court. The

answer that was filed to said original bill by plaintiff in error admitted the entry "on the margin of the record" of "a formal release of the quarter section," but expressly stated that she did not "know the nature or effect of said release." The answer of the infant defendants in error, by their guardian *ad litem*, was in the alternative. It stated matters to show that the mortgage never was a lien on said west half of the section, and further answered, that if it became and was a valid and binding lien thereon, then that they denied that there had been a valid or legal release of the north-west quarter, and insisted that it was still subject to the lien of the mortgage, and must bear its share of the mortgage indebtedness. It thus appears that by the original bill the court was asked to adjudge in respect to said north-west quarter, and that plaintiff in error, in her answer thereto, submitted to the court the question of the nature and effect of the supposed release of said quarter section. Defendants in error claimed to be owners of both the north-west quarter and the south-west quarter, and it was competent for them to show, regardless of any question of a release, that neither of said quarter sections had ever been subject to the lien of the mortgage. It was admitted by the bill that on April 2, 1888, James L. D. Morrison had made to defendants in error a deed for the south-west quarter. At a subsequent date, on May 15, 1888, said Morrison made to plaintiff in error a deed for the north-west quarter. It was manifestly for the interest of defendants in error that if the south-west quarter was held to be subject to the lien of the mortgage, then that the north-west quarter should also be held to be subject to such lien. They had a right to put in issue, and by their answer did put in issue, the validity and effect of the release of said north-west quarter. We think that said quarter section of land formed a part of the subject matter of the original bill.

It is urged that the cross-bill should not have been entertained because it presented simply an issue at law in respect

to the legal title to said north-west quarter of section 9. De--
fendants in error alleged and claimed under a deed to their
father, which embraced the entire west half of the section.
Their ancestor had died in possession of the premises, and
from the date of his decease they and their mother had re--
mained in possession. They being in possession, manifestly
could not bring ejectment.

*Parker et al.* v. *Shannon*, 114 Ill. 192, *Gage* v. *Mayer*, 117
id. 632, and *Tobey* v. *Foreman*, 79 id. 489, cited by plaintiff in
error, are not here in point. In one case the defendant was
in possession of the land, and the complainant in the bill had
an adequate remedy at law for the trial of his purely legal title.
In another the complainant in the cross-bill had a complete
remedy by action of ejectment, and improperly sought by
cross-bill the investigation of independent tax titles which
were not germane to the subject involved in the original bill.
And in the third it was held that it was indispensable to a
cross-bill seeking affirmative relief, that such relief should be
equitable relief. Here, the relief sought and obtained by the
cross-bill was, that the heirs of James L. D. Morrison, de-
ceased, should be decreed to execute a quitclaim deed for the
west half of section 9 in lieu of an unrecorded deed which
had been lost; and that the mortgage of May 15, 1881, and
the deed of May 15, 1888, should be removed as clouds upon
the title of defendants in error to all or a portion of said land.
Such relief was equitable relief, and of a kind that the court of
chancery has jurisdiction to grant. (*Bennett et al.* v. *Waller
et al.* 23 Ill. 97; *Gage* v. *Griffin*, 103 id. 41.) The defendants
in error, therefore, had a right to file a cross-bill, and state
new facts connected with the subject matter of the original
suit. (*Jones* v. *Smith*, 14 Ill. 229.) Plaintiff in error, and all
the heirs-at-law of James L. D. Morrison, deceased, were par--
ties to the original bill to foreclose mortgages exhibited by
Julia A. A. S. Morrison, and it was not required of defendants
in error that they should bring two bills in respect to the half

section of land described in their lost deed, a cross-bill in respect to the south-west quarter, and an original bill in respect to the north-west quarter. Equity abhors a multiplicity of suits, and when it has jurisdiction of a subject matter and of the parties in interest it seeks to do complete justice. We think that there was no error in entertaining the cross-bill.

It is urged that the evidence does not sustain the finding of the circuit court that James L. D. Morrison made and delivered to Eugene M. Morrison a deed for the west half of section 9. William E. Morrison testifies that in 1878, at the request of his father, he wrote a deed from his father to his brother, Eugene M., for said land; that it was a long form warranty deed, and that the consideration stated therein was love and affection and one dollar; that he saw his father sign it, and heard him acknowledge it before David F. Murray, a notary public in Morrisonville, and that his father took it to St. Louis for the purpose of procuring the signature of his wife, Julia A. A. S. Morrison; that his father afterwards brought it back; that a signature which he knows was the signature of said wife was to it, and her acknowledgment before an officer in St. Louis; that he saw his father deliver said deed to Eugene M., and that such delivery was made in 1878, on the east porch of the house standing on said land, and in which Eugene and his family were then living, and that he afterwards saw the deed in an encyclopedia in Eugene's house. Olivia A. Monegan testifies that in 1878 she saw the deed for the west half of section 9 delivered to Eugene M. Morrison, her then husband, at the house in which they were then living, and some time afterwards saw said husband reading it. Both she and William E. Morrison testify in regard to the loss of said deed, and the search that had been made therefor. It appears from the testimony that in about 1877 James L. D. Morrison conveyed to his son William E. a half section of land, to his daughter Virginia A. two hundred and eighty acres of land, and to a trustee, in trust for his daughter

Mary E. Carr, a farm, and subsequently to trustees, in trust
for his daughter Mrs. Kelley, two hundred and eighty acres of
land, and that this included all his children except Eugene M.
E. A. Campbell testifies that in 1877, and prior thereto, Col.
Morrison frequently told him that he intended the west half
of section 9 for Eugene. J. B. White testifies to like effect.
Campbell, White, Joseph P. Carr, and several other witnesses,
testify that about 1877 Col. Morrison built the dwelling house
on the south quarter section of said land as a residence for
Eugene M., and that the latter moved into the same. It ap-
pears from the testimony of said Campbell and Carr, that
Eugene was an habitual drunkard, but that for about six
months in 1878 he kept sober, and was president of a tem-
perance society. Carr testifies that in the fall of that year,
about September, Eugene complained to him frequently of his
father's injustice in not having deeded to him the property in
section 9. The evidence shows that on November 22, 1878,
Eugene M. made a promissory note for $600, payable to the
order of James L. D. Morrison, and that to secure the same
he and his wife executed and acknowledged a trust deed to
Edward Abend on the north half of the north-west quarter of
said section 9, and that Col. Morrison endorsed the note and
got the money thereon from the Belleville Savings Bank, and
left the note and trust deed with the bank as security. The
colonel afterwards paid the money back to the bank, and the
trust deed and note were surrendered to him. Abend testifies
that about the time of this transaction Col. J. L. D. Morrison
told him on several occasions that he had given his son Eugene
a farm near Taylorville. It is also in evidence that in 1888
Col. Morrison wrote two letters to Olivia A. Monegan, the
mother of defendants in error, in one of which he said: "I
have written to you to know if you know of a deed from me
written to Eugene for the quarter on section 9 your house is
on. I once paid it off for $600 to Abend, at Belleville bank,
and have the original deed trust, but I had forgotten that

Eugene had such a deed. See if you have such deed, and write me." And in the other of which he said: "Have you written down to your brother inquiring for the deed I gave Eugene? I have a copy of the trust executed by you and Eugene to the Belleville Savings Bank for $600, which I paid off."

We have carefully examined the evidence of Julia A. A. S. Morrison, J. P. Carr, Mary E. Carr, William Gately and Miss Clark, the letter of Mrs. Monegan to Noonan, the two letters of Col. Morrison to Mrs. Monegan, written in 1882 and 1885, respectively, the letters of William Monegan written in 1889, and all other testimony introduced by defendants to the cross-bill, and which seems to bear directly or indirectly upon the question of the execution and delivery of a deed to Eugene M. Morrison for the west half of the section 9 here involved. Some of it was incompetent, and some of it admissible only in determining the credibility of particular witnesses, and not competent to directly affect the rights of defendants in error. But waiving these latter considerations, and having in view the whole of this testimony, we find nothing in it, when considered in the light of the surrounding circumstances, and the habits and characters of the persons involved in the transactions, and of the evidence in the case when considered as a whole, that materially detracts from the probative force of the evidence in chief to prove the allegations of the cross-bill. In our opinion it is satisfactorily shown by the proofs that Col. Morrison made and delivered a deed for the premises in question to his son Eugene M. Morrison.

It is claimed that even if the deed was made, yet that Eugene M. Morrison, and his widow and children after his death, did not have such actual or constructive possession of the north-west quarter of section 9 as gave plaintiff in error notice of ownership under an unrecorded deed. This claim presents by far the most difficult question in this litigation. The facts in the case deemed most material upon this issue

are substantially these: In 1877 James L. D. Morrison gave and conveyed to his daughter, the plaintiff in error, two hundred and eighty acres of land in section 8, township 11, north, range 3, west, reserving to himself a life estate. About the same time he built for his son Eugene M., the father of defendants in error, a dwelling house on the south-west quarter of section 9, in said township, and said son and his family at once occupied said house as a home. The understanding between the father and son was, that the former would give to the latter the whole of the west half of said section 9. Said Eugene M. received the rents, issues and profits of said half section of land until the time of his death, in 1881, and he cleared about fifty acres of the brush land, ten acres of which were on the north-west quarter, the tract claimed by plaintiff in error, and he built a stable and barn, and planted fruit trees on the land. In the fall of 1878 Col. Morrison made and delivered to his son a warranty deed for the half section, but it was not placed on record. Shortly after this conveyance to him, the son and his wife executed and acknowledged a mortgage on the north half of the quarter section claimed by plaintiff in error, and said mortgage was given to secure a promissory note payable to the order of the father, who negotiated the same at a bank, and both the mortgage and the deed releasing the same were duly recorded in Christian county on January 23, 1879, and on March 25, 1881, respectively. No administrator was appointed for the estate of Eugene M. His widow wanted to go to Louisiana, but Col. Morrison urged her to remain, and said that he would pay her husband's debts and superintend the farm. The widow and children of Eugene M. have lived in the dwelling house on the south-west quarter ever since his death, and the rents of both quarter sections have been continuously received either by the mother, or by her present husband for her, and used in the support of the family and in clothing and educating the two children, except the rents of a part of the south-west quarter, which Col. Mor-

rison collected and used in paying the taxes on the lands. Col. Morrison made various contracts renting portions of the land, and he executed in his own name a written lease to Gately for the whole of the north-west quarter and a part of the south-west quarter, and subsequently, in 1885, he made an arrangement with William Monegan, the step-father of defendants in error, by which said Monegan was to use what he wanted of the lands and rent the residue, (except the tract the rent of which was set apart for the payment of taxes,) and apply the income and rents for the benefit of defendants in error; and, as has been before stated, on May 15, 1888, James L. D. Morrison made to plaintiff in error a deed for the north-west quarter of said section 9, and on the same day plaintiff in error conveyed to James L. D. Morrison and to his grantee one hundred and twenty of the two hundred and eighty acres of land, the reversion of which had been given to her by said James L. D. Morrison in 1877.

Some additional facts which we have not stated, bearing upon this branch of the case, appear in the testimony of Julia A. A. S. Morrison and Virginia A. Morrison. Such testimony was objected to at the hearing by the guardian *ad litem* of defendants in error, and such objection is here renewed. The objection is well taken. Defendants in error both defend and sue in the suit as heirs-at-law of Eugene M. Morrison, their deceased father. Julia A. A. S. Morrison, as assignee of a mortgage, is seeking to enforce the same against land which they claim as such heirs, and Virginia A. Morrison is asserting against them rights as a purchaser of a part of the land for value and without notice,—and, very clearly, both Julia A. A. S. and Virginia A. stand in the attitude of being adverse parties, and having adverse interests to the heirs of Eugene M. *Comer* v. *Comer et al.* 119 Ill. 170; *Way* v. *Harriman*, 126 id. 132.

Is plaintiff in error chargeable with notice of the unrecorded deed to the ancestor of defendants in error? Were the facts

and circumstances sufficient to put a prudent person about to purchase land, upon inquiry as to the title? As has already been suggested, the matter is not without difficulty. Our better opinion, however, is, that both of the above questions should be answered in the affirmative. Plaintiff in error received her deed for the north-west quarter of section 9 in 1888. At that time defendants in error, who were infants, were living with their mother and step-father in the house on the southwest quarter, and said step-father was either cultivating himself, or renting and collecting rents for all of both quarter sections, except that part of the quarter section admitted to be the property of defendants in error, which was applied to the payment of the taxes on all the land, and applying the income and rents for the benefit of his step-children. Ten years or more before that, the father of said children had moved into said house with his family, and occupied it as a home continuously until his death. He had cleared land on both quarter sections, and had received the rents of both quarter sections, and had executed and acknowledged a mortgage, which was duly recorded, on part of the north-west quarter. After the decease of the father, and until the step-father took control, in 1885, the mother and children continuously occupied the house as a home, and continuously received all the rents and profits of both quarter sections, except that reserved for taxes, as above stated. Col. Morrison, the grandfather, assumed a general supervision of both quarter sections, and rented lands in both, and even made in his own name a written lease which included lands in both. But these facts are to be read in the light of the surrounding circumstances,—that he was grandfather of the children, that their father was dead, that they were infants of tender age, that without taking out letters of administration he settled up the estate of the father, and that to induce the widow not to remove with the children to her native home in Louisiana, but remain with them on the land, he agreed with her to superintend the land. Defendants

in error were infants, and were living on the land. They were the legal owners of the whole of the west half of the section, and under a deed which called for the whole of said west half as one tract of land. The house in which they lived was on the south-west quarter, but the rents of the whole west half were being continuously collected and applied for their benefit. Being on the land and having title to the whole of it, and the rents of the whole being collected for their use, their possession and occupancy should be held to extend to the whole. They being under the disability of infancy, and having such possession, no acts or statements of either their mother or grandfather could deprive them of or affect their title.

In *Coari* v. *Olsen*, 91 Ill. 273, this court, citing numerous of its former decisions as authority, said: "Although other courts have held the doctrine of notice by possession as subject to being materially modified by circumstances, this court has uniformly held that actual occupancy is equal to the record of the deed or other instrument under which the occupant claims, and a purchaser is bound to inquire by what right or title he holds. The purchaser takes the premises subject to that title or interest, whatever it may be."

It is a fair inference from the evidence, that when plaintiff in error, in 1888, took a deed for the north-west quarter of section 9, she knew that her deceased brother had lived upon the west half of said section for a number of years, and up to the time of his death, and that he had continuously received and enjoyed the rents, issues and profits of the whole half section of land, and that from the time of his death down to the very day she got such deed, the widow and children of such deceased brother had continued to live thereon, and had in like manner received the rents and income of the whole half section. Under such circumstances a reasonably cautious person about to purchase the whole or a portion of the land would make an examination of the record, for the purpose of ascertaining what, if any, interest the deceased brother and

his heirs had in the land. If plaintiff in error made such examination, she found, or if she had made examination she would have found, a title in fee in her grantor, and a subsequent mortgage on part of the north-west quarter of section 9, made by her brother, while in possession, to Abend, as trustee, to secure a promissory note made by her brother and payable to the order of her grantor. It would seem that notice of the record of such a mortgage is sufficient to put a purchaser on inquiry as to any unrecorded conveyance. *Ogden et al.* v. *Haven et al.* 24 Ill. 57.

Our conclusion is, that the decree upon the cross-bill of defendants in error should be affirmed.                        *Decree affirmed.*