**Kathryn E. Reifschneider, Appellee, v. Walter E. Reifschneider, Appellant.**

**Gen. Nos. 14,040 and 14,041.**

1. MARRIAGE—*when valid under laws of Indiana.*  A marriage between minors of ages sufficient to enable them to contract, is valid under the laws of Indiana where made pursuant to license duly issued and performed by an officer vested with power to solemnize

the same and followed by a return showing the solemnization of the marriage as required by law.

2. MARRIAGE—*what agreements do not affect validity of.* An agreement to keep secret the fact of marriage for a specified period does not affect its validity; nor (the marriage having been followed by copulation) does an agreement that the same shall not take effect for a stipulated period, affect its immediately fixing the status of the parties.

3. MARRIAGE—*effect of, under laws of Indiana, if made without issuance of license.* A marriage contracted in Indiana is not void if not solemnized pursuant to a license if the parties thereto believed that the marriage at the time of its making was legal.

4. SEPARATE MAINTENANCE—*when wife entitled to allowance for.* The marriage being established, it is the duty of the husband to support his wife in accordance with his condition in life and if he fails or refuses to do so and the wife in consequence thereof is living separate and apart from him without her fault, she is entitled to an allowance for her reasonable support and maintenance to be awarded to her in a proceeding for that purpose.

5. SEPARATE MAINTENANCE—*what not defense to proceeding for.* The fact that the complainant in a proceeding for separate maintenance resides in another state does not affect her right to maintain the same in the county of this state in which the defendant resides.

6. SEPARATE MAINTENANCE—*what may be considered in fixing alimony.* In fixing the alimony to be awarded in a separate maintenance proceeding, the court may not only take into consideration the present means of the defendant but his prospective inheritance as fixed by the terms of the will of a deceased ancestor.

Separate maintenance. Appeal from the Circuit Court of Cook county; the Hon. LOCKWOOD HONORE, Judge, presiding. Heard in this court at the October term, 1907. Affirmed. Opinion filed October 8, 1908.

JOHN GIBSON HALE, for appellant.

WILLIAM H. EMRICH and ROBERT P. BATES, for appellee.

MR. JUSTICE HOLDOM delivered the opinion of the court.

These two appeals were consolidated for hearing and determination pursuant to an order duly entered upon the agreement of the parties. They both arise out of the same proceeding, viz: a statutory bill for

separate maintenance. The appeals will therefore be considered and determined as a unit in this opinion, although separate orders will be entered in each case to carry into effect the judgment which will be here pronounced. The appeal in 14041 is from an order committing appellant for a contempt of court in not paying appellee alimony *pendente lite,* and the appeal in 14040 is from the final order in the cause decreeing appellee a separate maintenance with suitable allowance for support, solicitor's fees and costs.

These appeals call for our determination of three questions:

First, are the parties, Walter E. and Kathryn E. Reifschneider, husband and wife?

Second, if they are, was Mrs. Reifschneider, at the time she filed her bill for separate maintenance, living separate and apart from her husband without her fault, within the meaning of the statute providing for an allowance for wives so living?

Third, are the allowances made by the chancellor suitable and necessary for the wife and within the financial ability of the husband to pay?

The parties were married at Hammond in the State of Indiana on August 12, 1904. Both the contracting parties were of immature years, one said to be a little more and the other a little less than nineteen years of age. These young persons became acquainted at the Austin High School, and were lovers. Reifschneider was anxious that the marriage ceremony should be performed, although he was not able to or desirous of assuming the full responsibility which such relationship would impose upon him both by law and custom. He was, however, anxious to secure appellee for his wife, fearing, as he expressed it, that if he waited until she was older she would not feel the same way about it. It was then agreed between them that they should be married at Hammond, Indiana, and that the fact of such marriage should be kept secret for two years. In pursuance of this understanding the parties pro-

ceeded to Hammond, where Reifschneider procured a
marriage license from the clerk of the Circuit Court
of Lake county, Indiana, on the 13th day of August,
1904, and on the same day as appears by the return
upon the license, the parties were joined in marriage
by T. M. C. Hembroff, a judge of the City Court of
Hammond. The marriage is further evidenced by a
certificate under the hand of the officiating judge. All
of the foregoing was made to appear by a duly exem-
plified copy of the various documents referred to pur-
suant to the act of congress in relation to the exempli-
fication and authentication of records. The marriage
ceremony was followed by copulation, although each
of the contracting parties returned to their respec-
tive homes without apprising their families of the
new relationship existing between them. Appellee,
however, did make known to some persons the fact
that she was married and was the wife of appellant.
The parties continued to reside with their respective
families, who were kept in ignorance of the marriage
relationship until the following February, when the
mother of appellant discovered from the marriage
certificate the fact of her son's marriage to appellee.
Appellant's mother then did what a good woman with
natural instincts would have been expected to do under
these circumstances. She counseled the young people
to live together and proffered her help in furnishing
a flat for that purpose. Appellee was quite willing
to do so, and expressed herself as being willing to live
with appellant as his wife. But appellant doggedly
refused to live with appellee as his wife, and paid no
heed to the advice or admonishings of his mother to
take his wife and go to housekeeping with her. Ap-
pellee was working at the time of this conversation
and offered to keep at work and furnish her earnings
toward paying household expenses. Appellant at this
time made no denial of his marriage to appellee, but
flatly refused to either live with her or support her.
Subsequently the father of appellee died, and her

mother, having predeceased him, she was thereby left an orphan, and as her father left no estate, she was without support. She then went to Pittsburgh, Pennsylvania, and lived in the family of her aunt. Appellant did not contribute to the support of his wife during the time she lived in Pittsburgh. On April 24, 1905, appellant filed in the Superior Court of Cook county a bill for the annulment of his marriage with appellee, to which appellee interposed a demurrer. Upon the hearing of the demurrer it was held to have been well taken, and the bill was dismissed.

The following sections from the R. S. of Indiana were offered and received in evidence without objection:

"Sec. 7289. Marriage is declared to be a civil contract, into which males of the age of eighteen years and females of the age of sixteen years   *   *   *   are capable of entering.

"Sec. 7290. Marriages may be solemnized by ministers of the gospel and priests of every church throughout the State, judges of courts of record, justices of the peace, and mayors of cities within their respective counties.   *   *   *

"Sec. 7292. Before any person, except members of the Society of Friends, shall be joined in marriage, they shall produce a license from the Clerk of the Circuit Court of the County in which the female resides, directed to any person empowered by law to solemnize marriages, and authorizing him to join together the persons therein named as husband and wife.

"Sec. 7295. No marriage shall be void or voidable for the want of license, or other formality required by law, if either of the parties thereto believed it to be a legal marriage at the time.

"Sec. 7296. Every person who shall solemnize any marriage by virtue of the provisions of this act shall within three months thereafter file a certificate thereof

in the clerk's office of the County in which such marriage was solemnized, which certificate shall by such clerk be recorded, together with such license, and such record or a copy thereof shall be presumptive evidence of the facts therein stated." R. S. Stat. Indiana, 1901. Vol. 2, City Court.

"Sec. 3671. Such judge shall provide a seal for such court, which shall contain on the face the words, 'City Court of —— Indiana;' (filling the blank with the name of the city and county). A description of such seal, together with an impression thereof, shall be spread on the records of said court.

"Sec. 3672. City Courts shall be courts of record. * * *

"Sec. 3674. * * * Such judge shall have full authority to administer oaths, to take and certify acknowledgments of deeds and other instruments, to solemnize marriages, and to give all necessary certificates for the authentication of the records and proceedings in said court."

The legality of this marriage must be adjudged from the laws of Indiana, the place where the marriage contract was entered into, and whose law officer performed the marriage ceremony. The uncertain and inconsistent evidence of appellant cannot be received to contradict the solemn record of a sister state. All of the statutory requirements essential to a valid marriage under the statutes of Indiana the record discloses were substantially complied with. The marriage license was first issued, the parties were then married by an officer of the law, vested with power to perform the marriage ceremony. That officer made due return of the solemnization of the marriage upon the license, and the license with such return on it was then filed with the clerk of Lake county. The officer then issued a marriage certificate which the mother of appellant afterwards found in his possession. The marriage was valid by the laws of Indiana.

It is therefore valid and binding upon the parties in whatever other territorial jurisdiction they may live. This marriage, performed in Indiana, agreeable to its laws, was afterwards consummated in Illinois. The parties are husband and wife and have been such since August 13, 1904. But appellant contends that the agreement to keep the marriage secret for two years invalidates the ceremony and annuls the marriage. That this is an erroneous view of the law is too plain for discussion. Again, it is urged that the agreement was that the marriage should not go into effect for two years, and such an agreement, upon authority, vitiates the marriage. Were we willing so to concede, it would be an irrefutable argument to say that such rule is not applicable here because it is not denied that the marriage was consummated by copulation soon after the marriage ceremony was performed. From any angle from which these facts may be viewed, the consummation of the marriage, following so soon after the marriage ceremony, completed the contract of marriage and makes it binding upon both the parties. The testimony proves conclusively that the copulation which followed the ceremony was in the faith and belief by both parties that they were lawfully married to each other.

Section 7295 of the Indiana statute is significant in its bearing upon appellant's contention that no license was issued, for the other facts as to the performance of the marriage ceremony by an officer having authority to join parties in marriage being admitted, this section would be sufficient to cure the omission to procure a license, if such license had not been procured. This section reads "No marriage shall be void or voidable for want of license or other formality required by law if either of the parties thereto believe it to be a legal marriage at the time." We are impressed with the belief, from the evidence in the record, that appellant as well as appellee not only believed but had no shadow of doubt in their minds but

that they were lawfully married when they returned from Hammond to Chicago, on August 13, 1904, and in the faith of that belief assumed the relationship to each other of husband and wife. Neither can the marriage be avoided upon the contention that appellant was not of sufficient age to legally contract a binding marriage, for by section 7289 *supra* it is provided that a marriage may be entered into between "males of the age of eighteen years and females of the age of sixteen years." Both the parties' ages exceed that of the minimum so fixed by the statute.

Second. The marriage being established, it is the duty of appellant to support appellee as his wife in accordance with his condition in life, and if he fails or refuses to do so, and the wife in consequence thereof is living separate and apart from him, without her fault, she is entitled to an allowance for her reasonable support and maintenance, to be awarded to her in a proceeding for that purpose, in conformity to chapter 68 R. S.

The evidence conclusively proves that appellee, though willing, has had no opportunity to live with appellant in the marital relation. He refused to heed the appeals of his mother or to accept the financial aid which she proffered to enable him to live with his wife in a flat. He also refused to live with her in the home of her sister, Mrs. Lewis, until other arrangements could be made. While he claimed he could not support a wife on the money he was earning, yet he refused to live with her even after she overcame that difficulty by agreeing to continue working in a position from which she was receiving $30 a month. Strong circumstances of his unwillingness to live with his wife arise from the facts that he repudiated the validity of the marriage and filed a bill in an attempt to annul it, and that notwithstanding the death of her father left her bereft of parental protection, he did not go to her or contribute anything to her support. Appellee has maintained the averment of her bill that

she is living separate and apart from appellant without her fault. But it is claimed that because appellee, after the death of her father, moved to Pittsburgh, residing there with an aunt, that therefor she is a non-resident and not entitled to maintain this suit in the forum of this jurisdiction. It is elementary law that the residence of the wife follows that of her husband. Davis v. Davis, 30 Ill. 180.

This proceeding is purely statutory and must be governed entirely under the authority conferred by the statute, and this provides, in section 23, that "proceedings under this act shall be instituted in the county where the husband resides." Appellant is a resident of Cook county. In the forum of that jurisdiction the proceeding was properly cognizable.

Third. The marriage being established, as also the fact that appellee is living separate and apart from appellant, her husband, without her fault, the question remaining for determination is whether the allowance for suit money and support are justified from the proofs. It is evident from the record that appellant, so far, has not developed the capacity to earn much money, his ability in this line extending to not more than $15 a week. He is not possessed of any money. But he has admittedly an interest in property, subject to a life estate in his mother, under the will of Mathew Gottfried, the deceased maternal grandfather of appellant. The estate in the hands of the trustees of the Gottfried estate, in which appellant is the remainder man, exceeds $150,000 in value.

In view of this prospective inheritance, the allowances made both for support and solicitor's fee and suit money must be regarded as moderate and in every way reasonable, and in accordance with the condition in life of appellant. He has property from which he can realize money, if he chooses, to support his wife. This the law requires him to do.

Temporary alimony, appellant claims, should not have been allowed before the final hearing, as the mar-

riage of the parties was denied by appellant. While it is true that, until the relationship of husband and wife is either established by proof or admitted in the pleadings, it is not the rule to make any allowance for temporary alimony or suit money, in this case it was made to appear from facts in the record, that by the ruling of the Superior Court in the suit to annul the marriage, the facts set forth in the bill, upon which appellant sued for an annulment of the marriage, were insufficient to warrant its annulment, and further, that the facts set forth in the answer of appellant to the bill before us, were likewise insufficient to support the defense that the parties did not bear to each other the relation of husband and wife.

Before entering the initial order for alimony *pendente lite,* the chancellor had before him indisputable evidence of the lawfulness of the marriage of the Reifschneiders, and since that time the correctness of the court's conclusion has been substantiated in a hearing upon the merits, resulting in the final decree involved in this appeal.

Finally, appellant cannot advantage of his own refusal to perform the contract of marriage solemnly entered into by him with appellee, according to the forms of the law of Indiana. Appellee had a right to demand that appellant live with her in accord with the obligation and custom of that relationship, and his refusal to do so after her demand can be neither excused nor condoned.

A strange doctrine indeed it would be if a man, protesting his love for a woman, proffers marriage and, gaining her consent, the parties proceed to the marriage ceremony, in accord with the laws of a sister state, such marriage being followed by cohabitation, that because there was a compact between them to keep such marriage secret from their families for a time, the man can, at his own whim and caprice, annul the marriage by being recreant to his duty in refusing to live with and support his wife. Such a doctrine

would be monstrous and result in undermining the social fabric in its most sacred relation of life.

The order of May 8, 1907, holding appellant in contempt of court for non-payment of temporary alimony, is affirmed.

The final decree of the Circuit Court, awarding appellee separate maintenance with allowances for support and solicitor's fees, and ordering appellant also to pay the costs, being without error, is affirmed.

*Affirmed.*