Mary Cooper, Appellee, v. John B. Cooper, Appellant.

Gen. No. 5399.

1. SEPARATE MAINTENANCE—*when complainant entitled to decree.* If the complainant continues to live in the home supplied by the defendant, using the credit of defendant for her necessaries and receiving in addition a cash allowance, she is notwithstanding living separate and apart without her fault if the defendant is living elsewhere in an adulterous state, inasmuch as said complainant would have the right to leave such home upon the defendant returning there.

2. SEPARATE MAINTENANCE—*how amount of allowance determined.* The amount of the allowance in separate maintenance is to be based upon a consideration by the court of the property and income of the parties, their ages, health, habits, social condition and circumstances in life and the misconduct of the defendant.

3. SEPARATE MAINTENANCE—*when allowance for solicitor's fee excessive.* An allowance predicated upon the solicitor for the complainant going to California to take depositions of witnesses who have already made statements as to their knowledge, is improper

inasmuch as evidence could be taken by depositions at a much less expense than that imposed upon the defendant. *Held*, likewise, that an allowance of $25 per day for ten days to prepare for trial was under the evidence in this case excessive, but that under such evidence a trial fee of $300 was not excessive.

Separate maintenance. Appeal from the Circuit Court of Kankakee county; the Hon. CHARLES B. CAMPBELL, Judge, presiding. Heard in this court at the October term, 1910. Affirmed in part, reversed in part. Opinion filed April 6, 1911.

A. L. GRANGER and SAVARY & RUEL, for appellant.

COOPER & HOBBIE, for appellee.

MR. JUSTICE THOMPSON delivered the opinion of the court.

Mary Cooper on February 24, 1910, filed a bill against her husband, John B. Cooper, praying for separate maintenance and an injunction. The bill alleges that the parties were married in 1881, and that they lived together until January 17, 1910, when complainant was compelled to and did cease living with and has ever since without fault on her part lived separate and apart from the defendant. The complainant in her bill "represents that, as she is informed and believes, the defendant on January 29, 1906, in the city of Los Angeles, California, and in said city on divers other days and times during the months of January, February and March, 1906," committed adultery with one Florence Lee. The bill also contains similar allegations charging the defendant with adultery with said Florence Lee in Los Angeles in January and February, 1908, and in Kankakee, Chicago and Springfield at times unknown to complainant.

The complainant further alleges that on January 17, 1910, her husband left her in the city of Kankakee and did not inform her what his address would be and is still absent, that he has written to members of the family, the letters having been mailed on trains near Los Angeles, California, and that complainant believes

the defendant is now living and residing near Los Angeles; that one Florence Lee left Kankakee about the same time as her husband and she believes her husband and said Florence Lee are now living together in a state of adultery; that in March, 1908, complainant became convinced that improper relations existed between her husband and the said Florence Lee; that her attorney called upon her husband and the said Lee in the city of Los Angeles and found them living together and so informed complainant; that afterwards complainant reproached her husband with his said conduct and he thereupon promised that said improper relation would cease; that the defendant continued such improper relation, as she believes, and has treated complainant harshly and sworn at her, and refused to pay store bills for necessaries, and failed to provide complainant with money commensurate with his wealth, but that complainant endeavored to live with him, dreading exposure and publicity, and desiring to do for the best interests of their children; that there have been born of said marriage four children of whom Allen aged twenty-two and Glenn aged ten are living with complainant; that the complainant has no income or property; that the defendant is the owner of a homestead in Kankakee worth $10,000, of farm lands in fee simple worth $80,000, a life estate in lands worth $65,000, and a life estate in lands worth $50,000, subject to a prior life estate of his mother, and that his annual income is $6,000. The bill alleges that when he left he made no provision for her except to leave checks with her for five dollars per week dated ahead; that he intends to return within sixty days, and that on his return he will come to his home and it will be impossible for her to preserve her status of living apart from him. The prayer of the bill is that defendant be enjoined from returning to his home and for a suitable provision for the separate maintenance of the complainant. A temporary injunction was granted as prayed.

The defendant answered the bill denying that he is living separate and apart from his wife in contemplation of law, but admitting he left at the time alleged to go to California to spend the winter, to get relief from throat trouble from which he could only get relief in a mild climate, as he has done for many years, but with the intention of returning in the spring; stating that he provided the complainant with checks for incidental expenses during his absence; that complainant also received $25 per month rental for part of the residence, and that she had full credit on his account for the usual family expenses at all the stores in Kankakee. The answer denies all ill treatment alleged, and denies that he had any improper relations with Florence Lee. The answer further states he is willing to allow his wife a reasonable support if the court finds she is living separate and apart from him within the meaning of the statute. The answer admits the ownership of property as alleged in the bill, and states that he owes $25,000 on which he pays interest; that the taxes and repairs amount to $1,000 per year and that a crippled son, Harry, occupies 120 acres of the land from which defendant receives no income.

The complainant filed a verified petition for temporary alimony, suit money and solicitor's fees, supported also by an affidavit of one of her counsel, in which counsel enumerates the different items for which an allowance is claimed.

The court made an order allowing to complainant $25 per day for fifteen days going to and returning from California to take depositions; $25 per day for ten days preparing for trial and a trial fee of $300, a total of $925 to pay solicitor's fees; $50 for procuring the attendance of witnesses and stenographer's fees in California; $290 as other suit money, composed of $215 traveling expenses to California and $75 for procuring the attendance of witnesses and preparing evidence to be produced in open court, and $75 per month alimony. The defendant appeals from that order.

It is contended by appellant that the complainant is not living separate and apart from him while she occupies the home, which is furnished by him, and she continues to be supported by him through his credit at stores where the parties trade and has checks of appellant for five dollars per week for incidental expenses, and that the court erred in allowing $75 per month temporary alimony. The allegations of the bill in substance are that when it was filed the appellant was living in an adulterous relation with Florence Lee in California, where appellant had gone to spend the winter, leaving appellee living in his residence in Kankakee. Appellant admits that the parties are not living separate and apart because of any fault on the part of appellee. If the allegations of the bill be true, it would not be questioned but that the appellee would be justified in leaving the home if appellant should return to live there, and that appellee is entitled to a decree for separate maintenance; the amount of the allowance to be based upon a consideration by the court of the property and income of the parties, their ages, health, habits, social condition and circumstances in life and the misconduct of the appellant. Harding v. Harding, 180 Ill. 481. No question is raised concerning the propriety of the injunction restraining the appellee from returning to his home until the further order of the court. Appellee contends that because of his alleged adultery she was justified in living separate from appellant, and that she was not supported as a wife should be in her situation and the circumstances of her husband. The necessary expenses of a bare living are not all she is entitled to, but she should be maintained and supported consistently with her station in life and the financial ability of her husband. We are of the opinion that it is immaterial where appellee resided, provided she was not living with appellant, and immaterial that he paid her necessary household expenses, when the alleged misconduct is

considered, except that such matters should be considered in determining how much if anything additional should be paid by appellant.

The affidavit filed by appellee on the motion for temporary alimony shows that she believes the income of appellant is "upwards of $6,000 per year." The answer and affidavit of appellant show the items of which his property consists; that he is receiving the income from 790 acres of farm land which rents at from four to seven dollars per acre, or "at an average of six dollars per acre;" that he supports a crippled son by giving him the use of another 120 acres of land practically free from rent; that he also has a life estate in 330 acres of land subject to a prior existing life estate; that there is a mortgage of $20,000 on part of his lands on which he pays six per cent interest per annum, and appellant owes other notes and accounts amounting to $5,000 bearing interest; that the taxes on his lands are $500 and the necessary repairs amount to $500 annually. From this showing appellant's gross income does not exceed $5,000 out of which he pays $1,500 interest and $1,000 in taxes and repairs, leaving his net income about $2,500. Appellee admits she had checks for $5 per week and does not deny she was receiving $25 per month rent of rooms in the residence, from entering which appellant was enjoined, or that she was using and had credit on appellant's account for all household expenses at the stores, which expenses appellant was paying at the time the order for temporary alimony was made. Appellee having checks for $5 per week, collecting $25 rent per month, and having all household expenses paid by appellant, was receiving all she was temporarily entitled to. The order for $75 per month should not have been made for the reason she was already as amply provided for by appellant as his income justified.

It is insisted the court erred in allowing $375 attorney's fee to take depositions in California, $215

traveling expenses in connection with taking such depositions, $250 for counsel to prepare the case for trial, and $300 for a trial fee. The affidavit made by one of her solicitors states that he has the statements of three witnesses at Los Angeles and one at San Francisco as to the conduct of defendant with Florence Lee; that he knows of two other necessary witnesses at Los Angeles, whose testimony he believes to be material, but he has not interviewed them and does not know the exact nature of their testimony; and that there is other testimony that could be obtained by a trip to Los Angeles; that said evidence can only be satisfactorily taken to be used on the trial by affiant going to Los Angeles and San Francisco; that fifteen days would be consumed in traveling and taking depositions and that his reasonable fees for such time would be $25 per day; that a stenographer's fee, notary's fee and costs of procuring the attendance of witnesses would be $50; that his hotel bills would amount to $35; that his railroad fare would be $110 with $30 to be added thereto for a berth in a sleeper; that to prepare the case would take ten days for which a reasonable charge would be $25 per day; that a reasonable trial fee would be $300; that $75 will be required to get witnesses to view the real estate of defendant, and there should be allowed $300 to complainant for other costs and expenses.

The statute (chapter 68, sec. 22) provided that, "the court may grant allowance to enable the wife to prosecute her suit as in cases of divorce." It follows from what has been said that the appellee, being without means of her own is entitled to a decree for her necessary and reasonable costs and solicitor's fees. It appears from the affidavit of counsel that he has "the statements and evidence of three witnesses as to said acts and conduct alleged in said bill, which said three witnesses now reside at or near the city of Los Angeles," and the statement of another witness at San

Francisco. Having such information, there is no reason shown requiring the allowance of attorney's fees at the rate of $25 per day for fifteen days and $215 for traveling expenses from Kankakee to California. The statute provides for the taking of depositions in foreign states upon either written or oral interrogatories. The attorney having written statements of the witnesses, their depositions could as well be taken upon written interrogations or local counsel could have been employed to propound the questions. There is no necessity for making the appellant pay attorney's fees at the rate of $25 per day for an attorney while traveling to and from California and his traveling expenses. If going to California can be justified it might become necessary to go to Paris or London or Hongkong. Neither can the allowance for these purposes be sustained on the theory that it was necessary for the attorney to go to California in the capacity of a detective. Investigations of that nature are not in the line of the professional duties of a solicitor in chancery.

The only issue in the case was whether the appellant was guilty of adultery since the offenses, if any, prior to March, 1908, had been condoned. There is little room for controversy over the amount of his income, that being solely a question of rents received from farm lands, which the answer does not make materially different from appellee's allegations in that regard, with the exception that appellee makes no statement as to appellant's indebtedness and his taxes and repairs. The court also allowed $25 per day for ten days to be spent in preparing the cause for trial. When the simplicity of the issue and the frequency of such issues are considered we can see no reason for such an allowance. An allowance by the day for such a length of time should not be made. Farrell v. Farrell, 149 Ill. App. 47.

The court also allowed $75 "for procuring the at-

tendance of witnesses and preparing evidence to be produced in open court on the trial," and a trial fee of $300. It is contended the allowance for a trial fee is excessive. This was a matter resting in the sound judicial discretion of the court on a consideration of all the circumstances surrounding the case. She was entitled to a sufficient sum to have her case properly presented. When the facts of the serious nature of the charge, the financial condition of appellant and that he had employed two firms of lawyers to defend himself are considered, we cannot say that the allowance of $300 for a trial fee is so excessive as to warrant the interference of an Appellate Court.

The decree is reversed as to the allowance of $25 per day for fifteen days going to and returning from California to take depositions, as to $210 traveling expenses for an attorney going to and returning from California and as to the allowance of $25 per day for ten days preparing to try the case and as to the allowance of $75 per month as temporary alimony; and the decree is affirmed as to $50 allowed for procuring the attendance of witnesses and stenographer's fee in California, as to $75 for procuring the attendance of witnesses and preparing evidence to be produced in open court and the trial fee of $300. Appellant will pay the costs of this court.

*Affirmed in part, reversed in part.*