124

Eva S. McAdams, Appellee, v. Frank J. McAdams, Appellant.

Gen. No. 35,761.

Opinion filed June 20, 1932.

WILLIAM GILLESPIE, for appellant.

BROWN, FOX & BLUMBERG, for appellee; JACOB LOGAN FOX, of counsel.

MR. JUSTICE MATCHETT delivered the opinion of the court.

On September 24, 1931, Eva S. McAdams filed her bill for separate maintenance against her husband,

Frank J. McAdams. The bill alleged their marriage on October 10, 1904; that they continued their marital relationship until June, 1931; that three children, two sons and one daughter, were born of the marriage; that the younger of the boys is 19 and the older 24 years of age, and the daughter 22 years of age; that one of the boys and the daughter are living with complainant. The bill further alleged that for upwards of two and a half years immediately prior to the filing of the bill, to wit, about March, 1929, defendant abandoned the home and refused to contribute to it and that he persisted in this desertion.

On October 1, 1931, complainant filed a petition in which she prayed for alimony pending the suit and for solicitor's fees. She recites therein the filing of her original bill and the substance of it and avers that for many years past defendant contributed approximately $350 monthly for her support, but which he now refuses further to provide; that she is without property except such as is wrongfully withheld from her by defendant; that he is 49 years of age, a healthy man, and possessed, as she is informed, of property of the market value of not less than $75,000 and probably $100,000; that he is employed as chief engineer of a large city school building and has earned compensation in excess of $7,500 per annum for several years last past; that for more than two years he has refused to give complainant information as to his investments and has refused to pay over moneys belonging to her held by him; that by reason of the aforesaid desertion, abandonment and failure to provide for complainant she has been obliged to employ counsel, and that an effective representation of complainant's interest will require counsel to hold conferences and to investigate the facts in regard to "the extent of the several interests of petitioner and defendant in the proceeds of two parcels of real estate heretofore owned by your petitioner and defendant jointly, the beneficial owner-

ship of the proceeds which form one of the issues to be litigated in above entitled cause." The work which it is averred it will be necessary for the solicitors to perform in that regard is set up in detail and expenses which it is said will be incurred are stated to be about $350. Complainant requested an allowance of $2,000 for solicitor's fees and $350 for expense or suit money. This petition and the original bill are duly verified.

Defendant answered the petition denying that he was possessed of money belonging to complainant; denying that he has any property other than that listed and scheduled by him with complainant, except the income from his employment. He admits that for several years prior to the filing of the bill he contributed $325 a month toward the support of complainant, but states that he was then able to do so out of his capital income, which has since been cut off; that he now has a monthly income of $458 from his employment as chief engineer and receives $87.50 interest a month from a mortgage owned by him, and that this is his sole income. He denies that he has property of the value of $75,000 or $100,000; states that heretofore he received from the board of education of Chicago for overtime work income which has now been cut off by resolution of the board, and avers that the estimates as to the work of the solicitor for complainant are based on mere conjecture.

The court heard the evidence and on October 13, 1931, entered an order which found that for the two years last past defendant had earned from his employment a net income in excess of $7,200 per annum; that he was then in possession of real and personal property of not less than $25,000, from which he derived an annual income of not less than $1,000; that for a period of upwards of three years last past defendant had contributed the sum of about $325 monthly to the support and maintenance of complainant; that complainant claimed the right to an accounting from de-

fendant as to the proceeds derived by defendant from the sale of two parcels of real estate alleged to have been theretofore held in joint tenancy by complainant and defendant; that complainant had no other real or personal property and no income and was totally dependent upon defendant for support and maintenance; that the trial of the accounting issue would require a reference to a master in chancery to determine complainant's right to an accounting and the basis of such accounting if decreed; that the solicitors of complainant would be obliged to examine the chain of title to the two parcels of real estate, procure original contracts and deeds and copies of recorded instruments to show how title to said property was acquired, and held by complainant and defendant, and what disposition was made of it; that the solicitors would be obliged to interview and take the depositions or testimony of divers witnesses before the master on the matters pertaining to the disputed issue of complainant's ownership of a share and interest in the proceeds of the sale of the said parcels of real estate, and that the sum of $750 was a reasonable sum to be paid to complainant on account of her solicitor's fees. It was therefore decreed that defendant during the pendency of the suit pay to complainant $300 monthly for her support and maintenance and the said sum of $750 on account of and in partial payment of her solicitor's fees, and that these allowances should be taken into consideration on the final hearing of the cause. To reverse this order defendant has perfected this appeal.

It is contended in behalf of defendant that the allowance of $300 a month to complainant is excessive, and practically all the leading cases on this subject in this State are cited. *Harding v. Harding,* 144 Ill. 588; *French v. French,* 302 Ill. 152; *Gilbert v. Gilbert,* 305 Ill. 216; *Herrick v. Herrick,* 319 Ill. 146, are only a few of the numerous cases which have been called to our attention. It is urged that the amount of temporary

alimony should be less than that allowed upon the final decree, and this is ordinarily, although not always, true. Defendant also urges that as a general rule the temporary allowance should be from one-fifth to one-fourth of the husband's income. Such allowance has been granted in many cases, but we think it can hardly be said that it has been laid down as a general rule. We think the cases establish that where the suit of the wife is prosecuted in good faith the amount of alimony to be allowed pending the suit shall be controlled, first, by the necessities of the wife as shown by the circumstances, and second, by the financial ability of the husband to make the necessary contribution to the end that in the prosecution of her suit she shall be placed upon an equality with him. That the amount is not limited solely by the income, but that the amount of property possessed may be taken into consideration, see *Low v. Low,* 133 Ill. App. 613; and that this court upon review will refuse to set aside the order of the chancellor, except for abuse of discretion, see *Harding v. Harding,* 144 Ill. 588; *Cooper v. Cooper,* 185 Ill. 163; *Low v. Low, supra;* and *Longhi v. Longhi,* 193 Ill. App. 21.

Defendant has discussed quite in detail the evidence as to the income and value of the property held by him. If it should appear upon the final hearing that the chancellor has now put too high an estimate upon these, that matter can be then taken into consideration; but in view of the fact that according to defendant's own testimony the amount allowed for complainant's maintenance pending the suit is at least $25 a month less than the sum which he has voluntarily paid hitherto, we find it difficult to believe that the trial court abused its discretion or that there is any justification for our interference.

A much more serious question is raised by the contention of defendant that the allowance of $750 for solicitor's fees *pendente lite* is excessive. The pro-

ceedings which appear in the record would indicate that in its principal aspect the case is little more than a very simple one for separate maintenance where the wife alleges that she is living separate and apart from her husband without her fault, and we would regard an allowance of $750 on account of solicitor's fees in such a suit under circumstances here appearing as excessive. This case, however, goes further and the pleadings indicate that it is the expectation not only to try the issue of whether complainant is entitled to separate maintenance but also to determine the respective rights of the parties in and to the proceeds of two parcels of real estate which formerly stood in the names of the husband and wife as joint tenants. Defendant contends that these matters are without the jurisdiction conferred upon a court of chancery by the Separate Maintenance Act, Cahill's St. ch. 68, ¶¶ 22, 23, and that it was therefore improper to make an allowance for solicitor's fees covering such services. Defendant cites *Cooper v. Cooper,* 160 Ill. App. 449, *Johnson v. Johnson,* 125 Ill. 510, with many other cases, such as *Ross v. Ross,* 69 Ill. 569, 570; *Raab v. Raab,* 150 Ill. App. 554; *Appeal of Spohr v. Kraus,* 197 Ill. App. 348; *Reifschneider v. Reifschneider,* 144 Ill. App. 119; *Smith v. Johnson,* 321 Ill. 134; *Smith v. Smith,* 334 Ill. 370. These cases are all to the effect that a court of chancery has no inherent power either to grant a divorce or to decree separate maintenance independent of statutes on these subjects. The opinions point out that in England the ecclesiastical courts had exclusive authority to grant divorces *a mensa et thoro;* that Parliament alone had power to dissolve the marriage contract absolutely, and that a proceeding for separate maintenance, as well as one for divorce, is therefore a purely statutory proceeding to be carried on according to the provisions of the statute and not in the exercise of powers inherent by reason of general chancery jurisdiction. The subject

was considered in *Thomas v. Thomas,* 250 Ill. 354, where it was held that a court of chancery was without equitable jurisdiction to decree the care and custody of children as between their parents except as provided by the Divorce Act and in case of a divorce granted. In *Hoffman v. Hoffman,* 330 Ill. 413, upon the same theory and for the same reasons, it was held that a decree of separate maintenance for a wife against her husband was not *res adjudicata* to a charge of cruelty in his suit afterwards brought for a divorce. In *Smith v. Smith,* 334 Ill. 370, it was held that where in a proceeding for divorce the husband and wife had agreed upon terms of alimony which had been included in a decree entered, she could not thereafter by petition under section 18 of the Divorce Act, Cahill's St. ch. 40, ¶ 19, have that decree reviewed upon the ground that the agreement was induced by fraud and that the shares of stock had decreased in value. Such relief, it was held, could be secured only by a proper proceeding under the general equity powers of the court. Defendant points out that this is the general rule applicable to proceedings which are purely statutory, as was held in *Kelly v. Kelly,* 285 Ill. 72, where the filing of a bill to contest a will was held to be a statutory proceeding in which the jurisdiction of a court of chancery was limited by the statute.

That the proceeding for separate maintenance is essentially different from a proceeding for divorce appears from an examination of the respective statutes. The fundamental difference is that a decree of divorce sunders and ends the marriage relationship. A decree for separate maintenance continues the marriage relationship. The purpose of the separate maintenance statute seems to have been to grant to married women living separate and apart from their husbands without fault an action in equity which would remedy the defects of the common law in that regard. *Ross v. Ross,* 177 Ill. App. 542. A complain-

ant who has secured a decree of separate maintenance may merely by resuming marital relations abrogate the decree. *Newman v. Newman,* 240 Ill. App. 193. The divorce statute gives power to settle property rights only in case a divorce is awarded. The separate maintenance statute does not mention or grant such power. The omission is significant and persuasive.

Complainant cites two cases which it is contended establish the rule that a court of equity in an action for separate maintenance has jurisdiction to pass upon and settle the property rights of the parties. One of these is *Burgess v. Burgess,* 189 Ill. App. 513. In that case Morris Cohen, intervening in a separate maintenance suit wherein a receiver had been appointed for the property of defendant claimed by complainant, filed a petition alleging that he had obtained a judgment against defendant on which an execution issued had been returned, "No property found," and asked authority to garnishee the receiver. Defendant demurred to the petition. The demurrers were sustained and Cohen appealed claiming the right to the property in the hands of the receiver as against complainant. The opinion in that case states that it was contended that the court was without jurisdiction in a separate maintenance action to adjudicate the property rights of the parties, citing in support of the contention *Rosenbleet v. Rosenbleet,* 122 Ill. App. 408. That case was distinguished, and, on the authority of *Morrison v. Morrison,* 140 Ill. 560, and *Longshore v. Longshore,* 200 Ill. 470, 476, it was held that the court had such jurisdiction. The question there, however, was between a receiver and a third party whose petition invoked the general chancery jurisdiction of the court.

The second case relied upon is *Decker v. Decker,* 279 Ill. 300, where it appears that in a suit for separate maintenance the court proceeded to settle the property rights of the parties, no question of its jurisdiction to

do so having been raised. There are many authorities
to the effect that a question not presented to the court
will not be considered as having been decided and that
the language used by the court in an opinion in such
case is mere *obiter dictum* and not the law. *Bratsch
v. People,* 195 Ill. 165; *Schulte v. Warren,* 218 Ill. 108,
124; *Rhoads v. Chicago & Alton R. Co.,* 227 Ill. 328,
337; *People v. Lowenstein,* 297 Ill. 395, 398; *Prall v.
Burckhartt,* 299 Ill. 19, 36. Even if we would hold
that these two cases are authority for the proposition
that in the absence of objection a court of equity in
a separate-maintenance suit might on final decree set-
tle some property rights of the parties, it would not
follow that complainant is entitled to solicitor's fees
for the prosecution of that part of her cause.

Our conclusion is that since the court was without
jurisdiction to award solicitor's fees to complainant
for the preparation for the trial of her case as to prop-
erty rights involved, and was limited to the power of
granting a just, proper and reasonable fee for her
solicitor in preparing and trying the maintenance suit
proper, the allowance of $750 was excessive. We think
an examination of the whole record indicates that $300
would be a reasonable amount for the services in the
preparation and trial of the maintenance suit, and that
part of the order allowing solicitor's fees will be re-
versed and the cause remanded with directions to the
chancellor to enter an order for the payment of $300
to complainant on account of her solicitor's fees. That
part of the order which directs the payment of alimony
to complainant pending the suit will be affirmed.

*Affirmed in part and reversed in part and remanded
with directions.*

McSurely, P. J., and O'Connor, J., concur.