### IN THE

# SUPREME COURT OF TENNESSEE,

### FOR THE

# EASTERN DIVISION,

## KNOXVILLE, . . . . . . . SEPTEMBER TERM, 1883.

### COAL CREEK MINING AND MANUFACTURING COMPANY *v.* G. W. ROSS.

1. CHANCERY PLEADINGS AND PRACTICE. *Bill to remove cloud.* A complainant in a bill to remove a cloud from title, who is not in possession of the land in dispute, must show a good legal title to the land, or such an equity against the defendant, as to draw from him his legal title; and the defendant, where no such equity exists, as where the titles of the parties are distinct, may in defense set up a better outstanding title in a third person.

2. SALE OF LAND. *After-acquired title.* Upon a sale of land, not of a special interest therein, where the conveyance is by formal deed in land fee with a special warranty against any claim to be made by the vendor or any person claiming under him, an after-acquired title by the vendor will enure to the benefit of the vendee.

3. SAME. *Clerk's deed. Must be sustained. How.* A clerk's deed of land sold by him under the order of the court must be sustained, in a possessory action, by the judgment or decree so as to show jurisdiction to make the sale.

4. GRANTS. *Statute of limitations.* Actual possession of granted land under a younger grant, by clearing, enclosing and cultivating a part of the land, especially if notice of the fact be brought home to the

1—VOL. 12.

claimant under the older grant, will start the running of the statute of limitations, in favor of the possession, to the boundaries of the younger grant, and actual possession kept continuously for seven years, although on other parts of the granted land, would perfect the title.

### FROM ANDERSON.

Appeal in error from the Chancery Court at Clinton.     W. B. STALEY, Ch.

ANDREWS & THORNBURG for complainant.

A. S. PROSSER for defendant.

COOPER, J., delivered the opinion of the court.

Bill filed November 25, 1880, to remove a cloud from the title of the complainant to certain land, and to recover possession of the land. The complainant avers that it owns a tract of land containing 40,000 acres, which is described by metes and bounds, and the title to which is deraigned from the State, through the grantees and subsequent conveyees, to the Company. It is alleged that the defendant claims certain land included in the boundaries of complainant's title papers under a deed made by the clerk and master of the chancery court, by a title claimed to be derived by mesne conveyances from John Seiber and John McKamy, grantees from the State by virtue of Entry No. 751, made January 7, 1839, and a grant to them on August 25, 1849. The bill prayed that complainant's title to the land be declared valid and perfect, that the defendant be perpetually enjoined from claiming title to any part thereof, and that complainant have

Coal Creek Mining and Manufacturing Co. *v.* Ross.

a writ of possession therefor. · G. W. Ross, the only
material defendant below and the only defendant now
in court, after denying in his answer that the com-
plainant is the owner in fee of the land as alleged
in the bill, deraigns his title from the Seiber and
McKamy grant, relies on the statutes of limitations,
and disclaims title to any of the residue of the com-
plainant's 40,000 acres.

The Seiber and McKamy grant is for 2,000 acres,
and the greater part of the land called for by it is
included within two of the grants under which the
complainant claims, the Richardson grant and the Clark
grant. These two grants are for 5,000 acres each,
and lie side by side in the form of parallelograms of
equal size. The defendant's grant, in the form of an
irregular parallelogram, lies diagonally across the south-
ern part of the Richardson grant, three of its four
corners extending outside of the boundaries of that
grant on the east, south and west, the western corner
being on the Clark grant. The complainant's entries
and grants are older than the entry and grant of the
defendant. The complainant had, therefore, the better
paper title, and the reliance of the defendant is upon
having acquired the better title by the statute of lim-
itations. The chancellor was of opinion that the com-
plainant was entitled to all the land in dispute covered
by the Clark grant, and to all the land claimed by the
defendant, under the deed of the clerk and master,
north of the original northern line of the Seiber and
McKamy grant, within the Richardson grant. But
he was also of opinion that the defendant had ac-

·quired the better title by virtue of the statute of limitations to all the residue of the land in controversy within the Richardson grant. The complainant prayed a special appeal from so much of the decree as embodied the latter ruling. The Referees have reported in favor of reversing that part of the decree, and the exceptions reopen the question.

Whether the bill be treated as a bill to remove a cloud from the complainant's title to the land in dispute, or as an ejectment bill, the complainant, who is not in possession, must show a good legal title, or such an equity as against the defendant as to draw from him his title: *Ross* v. *Young,* 5 Sneed, 627. No such equity exists in this case, the parties claiming under different and independent rights. The complainant has the oldest entries as well as oldest grants, and its title under the Richardson grant is properly deraigned. For, although Richardson conveyed before he obtained his grant, he conveyed the land, not his interest therein, with a covenant of special warranty. The conveyance was by a formal deed, which recites that, for a money consideration, Richardson had "bargained and sold and doth hereby transfer and convey to W. S. McEwen, his heirs and assigns forever," the land, describing it, with the following covenant: "I do covenant and bind myself, my heirs and representatives, to warrant and defend the title of said land to Wm. S. McEwen, his heirs and assigns forever, against any claim to be made by myself, or any person claiming through or under me, but no further." The reason why an after-acquired title enures to the benefit

Coal Creek Mining and Manufacturing Co. *v.* Ross.

of a grantee is that the vendor is estopped by his warranty to sue the vendee on the new title, and the title passes to the vendee to avoid circuity of action: *Henderson* v. *Overton*, 2 Yer., 394. The reason, it is obvious, equally applies to a special, as to a general warranty, where the special warranty is of the title to the land, not of an existing or limited interest therein.

The Seiber and McKamy grant, under which the defendant claims, was issued August 25, 1849, upon an entry made January 7, 1839. At the time the entry was made, Seiber was the owner, and in the actual occupation of 250 acres of the land under an old grant, and McKamy was in like manner the owner of 50 acres under an older grant. The entry made by them, as well as the grant subsequently issued thereon, included the land thus held and occupied by them, and, it seems, several small tracts of land in the cove of the mountain along the creek bottom, held by other persons under older titles. These older titles also antedated the entries and grants of the complainant, which cover the same lands. There is proof that there are, outside of these old grants and settlements, about 1,000 acres of land not occupied by any person, being on the mountain, which are covered by the title papers of both parties. Of these unoccupied lands, about 765 acres are in one body, and claimed by the defendant under a deed executed November 20, 1872, by Levi Seiber and wife, describing the land by metes and bounds. This tract has been surveyed, and a plat of it is located upon the map of the grants

made a part of the record. It is not shown where the residue of the land in dispute is. No witness undertakes to locate, or give the boundaries of these lands, nor have they been platted and laid down on any map. Nor is there any testimony touching the boundaries of lands held under older grants or titles than t'ose of the complainant and defendant.

The defendant's chain of title from the Seiber and McKamy grant is as follows:

1. Deed from W. H. Whitson, clerk and master, to Levi Seiber, dated July 19, 1869, which undertakes to convey all the land in the grant itself, and an additional strip in the northern boundary by a change in the call of the first line for course, which the chancellor corrected by his decree not appealed from.

2. Deed from Levi Seiber and wife to E. A. Reed and G. W. Ross, dated November 20, 1872, which undertakes to convey the 765 acre tract above mentioned, being within the grant, and the clerk and master's deed.

3. Deed from W. H. Whitson, clerk and master, to E. A. Reed and G. W. Ross, dated September 13, 1878, in pursuance of a sale made September 1, 1873, for a parcel of land lying north and east of the 765 acre tract, the number of acres of which is not mentioned. Part of this land lies north of the northern line of the Seiber and McKamy grant, and is given to the complainant by that part of the chancellor's decree not appealed from.

4. Deed from E. A. Reed and wife to G. W.

Ross, dated December 10, 1874. This deed conveys to Ross, among other tracts, the 765 acre tract, and the entire Seiber and McKamy 2,000 acre tract, bounded as in the grant. But Reed, so far as appears, had no title to any part of the land covered by the Seiber and McKamy grant, except to the 765 acre tract, and the tract north and east thereof.

It is not contended that there has been any such open and continuous adverse possession by Reed and Ross and by Ross alone, under these conveyances, of any of the land in dispute, as would vest the defendant with a title under the statute of limitations. The effort in argument has been to show such possession in the original grantees, Seiber and McKamy, or at any rate in John Seiber, one of these grantees and his children, as would perfect the title. But the defendant has failed to show a chain of title connecting him with the grantees and the grant. The deed of Whitson, clerk and master, of September 13, 1878, purports on its face to be made by him under a decree of the chancery court of Anderson county, "made in the cause of G. W. Leath, administrator, etc., complainant, and J. D. Taylor and others, defendants," without further explanation. The other deed of Whitson to Levi Seiber of July 19, 1869, does purport to be made in pursuance of a decree and sale made in a cause pending in the chancery court of Anderson county, of "Levi Seiber, administrator of the estate of John Seiber, deceased, against Philip Seiber and others, heirs-at-law and distributees of the estate of the said John Seiber, deceased, pray-

ing a sale or division of the said estate of said deceased amongst his heirs." But a clerk's deed, like the deed of a sheriff, in the execution of the judgment or decree of the court, must be sustained by the production of the judgment or decree, so that the court may see that there was jurisdiction to make the sale: *Campbell* v. *Badgett,* 2 Lea, 652; Freeman on Executions, sec. 350. Even a decree divesting and vesting title, which is expressly made a muniment of title, and authorized by statute to be registered, must, it seems, embody the facts necessary to show the jurisdiction of the court: *Whitmore* v. *Johnson,* 10 Hum., 610; *Lowry* v. *McDurmott,* 5 Yer., 225; Code, sec. 2030, sub-sec. 16; Sec. 2071.

If, however, the bill be treated as an ejectment bill, the complainant must recover on his own title, and the defendant in possession may successfully defend by showing a better outstanding title in a third person: *Massengill* v. *Boyles,* 11 Hum., 114; *Humble* v. *Spears,* 8 Baxt., 156. A bill to remove a cloud from title was originally a remedy *quia timet,* to enable a party in possession of land to remove a possible danger from an instrument capable of future misuse: 1 Sto. Eq. Jur., sec. 700. When this court extended the remedy to a person out of possession, and allowed him to recover the land, as well as to remove the cloud, the suit was virtually changed into an action of ejectment: *Almony* v. *Hicks,* 3 Head, 39. And so Judge McFarland in effect concedes in *Buck* v. *Williams,* 10 Heis., 264. There can be no reason in saying that a person in possession of land

Coal Creek Mining and Manufacturing Co. *v.* Ross.

may defend an action at law to recover possession by showing an outstanding title, and yet that he shall not defend a similar suit in equity in the same way.

This brings us to the question so elaborately argued by the counsel on both sides, whether there was such open, notorious, and continuous adverse possession for seven years as to give title, under the Seiber and McKamy grant, to the grantees and their heirs.

It will be remembered that both. Seiber and Mc-Kamy, when they made their entry, as well as when they took out their grant, were in possession of portions of the land under older grants. A continuance of such possession, it is clear, would not be a possession under the new grant: *Smith* v. *Lee*, 1 Cold., 550. And it may be conceded that an extension of the enclosures inadvertently, not intentionally, beyond the lines of the old grant, would not have been adverse within the meaning of the statute, for it would not have been an open and notorious invasion of the rights of the persons under whom the complainant claims. But an intentional extension of the enclosures, and, *a fortiori*, independent improvements and enclosures openly made under a chain of right by virtue of the new grant, would be a possession which by time would be ripened into a perfect title to the extent of the boundaries of the new grant: *Peck* v. *Houston*, 5 Lea, 227.

The proof shows that shortly after the issuance of the grant to Seiber and McKamy, and before the year 1853, the grantees made a partition between them of the land claimed under the grant, by a line well

known in the neighborhood, and which was, it seems, called for as early as 1853 in a deed of a portion of the land made by John Seiber, the grantee, to one Hoskins. It does not appear how this partition was made, whether by instrument of writing, proceedings in court, or in parol. Nor does the proof show the location of the boundary line between the grantees, although there is evidence tending to show that it might easily have been done. The only land which, by defined boundaries, is distinctly located in this case, and over which the contest has alone been made in this court, is the tract of 765 acres. This tract is shown by all the proof to have been claimed by John Seiber, and may be considered as on the land allotted to him in the partition. Seven years open, exclusive and continuous possession of this land by Seiber, even under a parol partition, would vest him with the legal title as against his co-grantee: *Saunders* v. *Hackney*, 10 Lea, 203. The question of title, therefore, as between complainant on the one side and Seiber and his heirs on the other, comes down to one of fact, has the younger right of Seiber ripened into a perfect estate in fee by adverse possession for the period of seven years as required by the statute of limitation. For the same possession would perfect his title as against his co-grantee and the complainant.

The surveyor, who ran out the lands and made the map thereof used in this case, testifies that there are lands outside of John Seiber's old home grant, which were cleared and improved by him, the house, constituting a part of the improvement, looking like it was

Coal Creek Mining and Manufacturing Co. v. Ross.

twenty years of age.   It is true, the witness seems to have been unable to make the lines of the grant correspond with the corners and lines pointed out to him.   And the complainant's counsel are justified in claiming that the proof fails to show an intentional clearing beyond the lines of the old grant, with a view to the rights acquired by the new grant.   In other words, the proof of these additional clearings about the lines of the old grant is scarcely sufficient, taken alone, to make out such a possession as, under the statute of limitations, would carry title to the lines of the new grant.

But there is proof of other clearings.   The witness, Hoskins, proves that in 1853 he bought from John Seiber 300 acres of land, part of the 2,000 acres of the Seiber and McKamy grant.   He owned, he says, about 200 acres of the land by a title older than the grant.   The land he bought from Seiber pretty well surrounded his old holding.   He was to have all from the dividing line between Seiber and McKamy, to begin at White Log branch, thence to the beech corner of the grant, thence south 400 poles, thence around the big bench of the Butt to the beginning.   He says that a part of the land thus bought had been cleared by Pleas. Seiber, a son of John Seiber, who had fenced the clearing, and raised corn on it before he bought.   He also proves, what is abundantly shown by other testimony, that Philip Seiber, another son of John Seiber, cleared land on the Butt of the mountain, lived there several years, and tended it every year.   The witness states another

fact, also deposed to by several witnesses, that the land he bought from Seiber was claimed by McEwen and Wiley. He went to see Wiley, before he bought, to buy the land from him if it was his. Wiley said: " I believe we have a grant that is a little older than Seiber and McKamy's, but they have got it in possession; you go and buy from them, we will never pester you." McEwen became the assignee of the lands under the Clark and Richardson grants in 1845, and the complainant claims the same land under a deed from Buckley, McEwen and Wiley, dated April 22, 1872. Wiley's name does not appear in any of the. grants or previous mesne conveyances of this land. But the proof shows that he was the active party in charge of these lands under the adverse claim both before and after the conveyance to the complainant, and that he is now dead. Other witnesses testify to Wiley's recognition of the possession of Seiber and McKamy. The evidence of the conversations with Wiley was objected to when the depositions of the witnesses were taken, but the depositions seem to have been read at the hearing without the objections being insisted on. We held at the last term at Jackson, upon full consideration, that unless such objections are shown by the record to have been insisted upon at the hearing, and ruled upon by the chancellor, they could not be made in this court. The testimony was. probably competent in any event to show knowledge of the adverse possession of Seiber and McKamy under their grant by the parties then interested in the land, under whom the complainant claims, the proof

on both sides showing Wiley's agency, if not owner-ship.

In this view we have an actual clearing, enclo-sure and cultivation of a part of the 2,000 acre grant by John Seiber, outside of his home grant, be-fore the year 1853, and knowledge of that possession, even if notice be necessary, brought home to the then owners of the title under which the complainant claims. That possession at once started the running of the statute of limitations to the boundaries of the grant, and if kept up continuously for seven years, although upon other parts of the granted land, would give title. The evidence does show that before 1853 Philip Seiber, a son of John Seiber, did clear and improve a few acres on the Butt of the mountain, afterwards occupied by Fred Seiber, another son of John Seiber, until the end of the year 1863, when he went into the Federal army, his wife remaining in possession until the close of the war. This clear-ing seems to have been abandoned in 1866, and the very site of it lost, so that no witness locates it with any certainty. In February, 1853, Philip Seiber mar-ried, and either that year, or within two years there-after, moved with his family to another small clear-ing which he had also made and improved on the Butt, and remained there, cultivating the land, until the close of the year 1863, when he, too, went into the Federal army, which entered Knoxville in Sep-tember of that year. Even when he did not live on this clearing, Philip seems to have cultivated it. If the seven years adverse possession was completed

before the courts were closed by the war, the suspension of the statute of limitations by the Constitution and act of 1865 would not affect the right thus acquired: *Harrison* v. *Henderson*, 6 Heis., 315, 347. And this court has said that it judicially knows the courts in this county were not closed during the years 1861 and 1862: *Girdner* v. *Stephens*, 1 Heis., 280. Counting the time until the end of 1862, the statute would be complete on Philip's possession alone, even if he did not actually occupy the land until January 1, 1856, although the weight of testimony would indicate that he went into possession a year or two earlier. And this clearing was afterwards occupied by several persons in succession, until the land was sold by Levi Seiber to John Lively about 1867. John Seiber, the father, died in 1861. Lively's title was afterwards bought by Reed and Ross.

It is argued that the possession of John Seiber's sons was for themselves, not for their father. And there is evidence that the sons claimed the property as their own. There is no proof, however, of even a parol gift of the land to them, or either of them, by the father, and the proof is clear that they took possession under him. Nor is there any thing to show that the father had any notice of a holding by either of the sons adverse to the possession taken under him: *Jordan* v. *Maney*, 10 Lea., 145.

Under these circumstances, and particularly in view of the notorious claim of John Seiber to the land under the 2,000 acre grant, and the partition between him and McKamy, of which it is clear the persons

under whom the complainant claims had notice as early as 1853, we think the title of John Seiber and his heirs was perfected by the statute of limitations, and that the chancellor's decree appealed from was correct.

The report of the Referees will, therefore, be set aside, and the chancellor's decree, so far as it was appealed from, affirmed. The costs of this court will be paid by the complainant, and the costs of the court below as adjudged by the chancellor.