## C. P. BEATY et al. v. WINCE OWENS et al.

Middle Section.    October 1, 1927.

No petition for Certiorari was filed.

1. **Pleading. Cross-bill. A cross-bill may be filed on any proper matter of equity growing out of the original bill or connected with it.**
    A cross-bill may well be based on any proper matters of equity growing out of the original bill, or connected with it, on which the respondent might be entitled to affirmative relief, or to obtain full relief between the parties, and a complete determination of all controversies which arise out of the matters charged in the original bill; and where the title and possession of real estate is involved, in order to prevent a multiplicity of suits, a court of equity, whenever it assumes jurisdiction of the parties and the subject matter, will entertain a cross-bill so as to do complete justice between the parties.

2. **Pleading. Cross-bill. A cross-bill in ejectment may be properly filed in a suit to enjoin trespass.**
    When one files a bill to protect possession and to enjoin trespass, and to recover damages for timber cut, and the defendant claims title and the right to possession, he has a right to file a cross-bill in ejectment setting up the title in himself and the right to possession, as the title to the timber is involved, and a complete determination of all the controversies should be had in order to prevent a multiplicity of suits.

3. **Adverse possession. Where part of land is conveyed adverse possession will not be presumed to the part conveyed.**
    Where a party conveys a part of the tract and holds adverse possession of the remainder for twenty years, a grant will be presumed for the part adversely held, but not for that part conveyed, as he has no possession of that conveyed.

4. **Adverse possession. Evidence. Evidence held insufficient to establish title by adverse possession.**
    Where the evidence did not show that the party had actually been in possession for the statutory period, held that the evidence was insufficient to establish title by adverse possession.

5. **Adverse possession.** The doctrine of adverse possession is to be taken strictly.

The doctrine of adverse possession is to be taken strictly, and must be made out by clear and positive proof and not by inferences, every presumption being in favor of a possession in subordination to the title of the true owner.

6. **Adverse possession of tenants.**

The possession of a tenant is circumscribed by the boundaries of the lease.

7. **Ejectment. Surveys and maps.** The trial court should order surveys and maps showing the location of various tracts, interlaps and possessions in complicated cases when not shown by the parties.

The trial court should order a survey and maps to be made in complicated cases, where the locations of the various tracts, interlaps and possessions are not definitely shown by the parties.

8. **Ejectment. A tenant in common may recover only his interest in ejectment.**

A tenant in common may recover his interest in ejectment but not the whole tract and the burden of proof is upon him to establish his interest.

9. **Ejectment. Plaintiff in ejectment claiming by descent must prove his heirship.**

Where a plaintiff claims by descent, he must prove his heirship, and must also show the extinction of all rights of those entitled before him. In other words, the plaintiff must show that he is the only heir, or if not, the number of heirs, in order to recover a proportionate interest in the land.

10. **Title. After acquired title passes only in case there is a warranty deed.**

An after acquired title inures to the benefit of the vendee only when the vendor warrants the title.

11. **Ejectment. Under statute in Tennessee an ejectment suit does not fail because the plaintiff has not established his right to the entire estate, if additional proof can be secured.**

Old cases from other states hold that in ejectment cases, they being common-law actions, the plaintiff must show that he is the only heir, or if not, the number of the heirs, and in order to recover a proportionate interest in the land, it was necessary that plaintiffs show what that proportionate interest was, hence if he did not show his exact interest his action must be dismissed; but under our statute, Shannon's Code 4509, where it appears from the record presented that more satisfactory evidence can probably be obtained upon the question presented for decision, if produced, such evidence will enable the court to come to a more satisfactory conclusion, the cause will be remanded for such additional proof in order that justice be done.

12. **Trial. Party not entitled to a new trial on ground of surprise, where he is given time to prepare their suit.**

In an action for the possession of real estate where the defendant filed a cross-bill for possession and title and the Chancellor permitted the cross-bill to be filed, and then continued the case for defense and proof, held that the plaintiff could not later complain because he did not offer proof on the cross-bill at the trial.

Appeal from Chancery Court, Fentress County; Hon. W. R. Officer, Chancellor.

Reversed and remanded.

Ward R. Case and H. N. Wright, of Jamestown, for appellants, C. P. Beaty et al.

W. A. Garrett, of Jamestown, for appellees, Owens et al.

CROWNOVER, J. The bill in this cause, filed on October 9, 1923, by C. P. Beaty and G. E. Harrison, alleged that they were in the possession of 350 acres in Fentress county, a part of Entry No. 999, and claimed the fee under recorded deed with actual possession by means of houses, barns and fields to the extent of their boundaries, and that the defendant Wince Owens and S. H. Beaty had entered on said boundary and cut and removed timber. It prayed for an injunction against trespass and for a decree adjudging possession of said land and timber to complainants, and for the value of the timber removed. .

The defendants answered and denied complainant's ownership of said land, and alleged that defendants were the owners of a boundary described, which was a part of Grant No. 12130, issued to John Young. They set up a compromise decree of a previous suit of C. P. Beaty v. Alvin Young and P. A. Taylor, in which C. P. Beaty had restricted his boundaries and had agreed to release all land north of a compromise line, and that S. H. Beaty had thereafter purchased said land at a chancery sale for partition, at which complainant G. E. Harrison was present and bid without disclosing that he claimed the tract of land that interlapped on the land in controversy, all of which was pleaded in estoppel.

After proof was taken defendants were allowed, over complainants' objection, to file their answer as a cross-bill and to amend it so as to sue in ejectment for said land and for a writ of possession, and the case was continued for defense and further proof. The complainants objected to the filing of the cross-bill, which the Chancellor at first sustained, but he later overruled the objection and permitted it to be filed, to which the complainants did not except, and they later filed an answer to the cross-bill and denied that cross-complainants had title to the land, pleaded seven years adverse possession, and generally denied all other allegations of the cross-bill not admitted in the original bill.

The complainants claimed title through a series of conveyances from an Entry No. 999, dated October 21, 1850 and adverse possession. They have filed in proof copies of said conveyances, from which it appears that William I. Beaty, assignee of Wily Y. Tinch had a certificate of a survey of Entry No. 999 for 640 acres, dated September 14, 1854, which he transferred to G. W. Beaty, which transfer was not dated, signed, or acknowledged, but the survey and transfer were recorded on April 16, 1881. This transfer was evidently written on the back of the survey and is as follows: "I William I. Beaty in consideration of $1.68 to me paid by George Beaty I transfer to him all my right and interest in and to the within described tract of land, and he is to receive the grant for the same."

G. W. Beaty on October 15, 1884 conveyed a part of said tract,

described, containing 437 acres to James N. Clark, but reserved 70 acres, "being the homestead and farm where said Beaty now lives to be laid off to him in a body, and includes his fields and containing after such deduction 367 acres, more or less."

Clark conveyed said tract to Bruno Gernt and he to complainant G. H. Harrison on July 17, 1917, each deed making a reservation of seventy acres, being the homestead and farm where George Beaty lived in 1884.

Complainants did not file copies of the entry and grant from the State of Tennessee, and in fact do not prove that any were ever issued by the State, but it is insisted that a grant may be presumed from adverse possession.

The complainant Beaty claims title under a deed from Laban Riseden conveying to him the land described in the Entry No. 999, without reservations, on September 9, 1919, which deed was recorded on June 8, 1921. It was claimed that Riseden had previously purchased this land from George W. Beaty, but no deed was filed, nor was it proven that such a deed was ever executed.

Complainants Harrison and Beaty had some litigation among themselves in the chancery court at Jamestown over this land, but they compromised and dismissed that suit, combined their titles and agreed to hold the land in common, and filed this bill against these defendants claiming that George W. Beaty had possessions on this entry under his transfer for a great many years, and that his title to the extent of his boundaries was perfected by adverse possession, and that they were in possession of said land when defendants committed the acts of trespass by cutting timber just before the present bill was filed on October 9, 1923. They insist that they had the legal title and the possession, which consisted of the C. P. Beaty possession—a field enclosing a strip of land thirty or forty yards wide by 300 yards long just north of a conventional line on the inside of the boundary of the land in controversy, placed there by C. P. Beaty in 1920 after he had purchased from Laban Riseden, and that G. E. Harrison had a possession of two or three acres within the western boundary of his deed, put there by William Beaty and held by him for about ten years for said Harrison.

The defendants claimed title through one John Young, who obtained a grant No. 12130 from the State of Tennessee for 1500 acres, dated September 10, 1858, based on Entry No. 1039, dated August 5, 1854, which grant covered the Beaty survey and the land now in controversy.

John Young died leaving a son, William D. Young, who cleared up, enclosed and cultivated about 100 acres of the Young grant, east of the Beaty survey, where he erected a house and lived for a great many years.

William D. Young died leaving several children, who took possession of parts of the Young grant, but in 1909 a part of the Young

tract, assessed to William D. Young's heirs, was sold for its taxes and purchased by P. A. Taylor and Alvin Young. A tax deed purporting to convey the fee was executed to them and recorded on July 23, 1909. This tract was described by general boundaries, on the north by Evans, south by La Rue, east by Hoover and west by Young. The acreage is not stated, but the proof shows that it covers the Young possessions and the land in controversy.

C. P. Beaty later filed a bill against P. A. Taylor and Alvin Young to enjoin a writ of possession, alleging that said boundaries covered 1000 acres and that he owned a tract of twenty-five acres within the said boundaris, conveyed to him by his father G. W. Beaty, and on August 8, 1910 a compromise decree was entered in that case, in which Beaty was given a certain described boundary, the number of acres not given, and he in turn released all lands north of a conditional line that bounded his tract.

Taylor and Young held adverse possession of said land by keeping up the possessions of William D. Young on said tract, but not within the boundaries of the land in controversy, from 1909 to 1917, when the bill was filed in the chancery court by the heirs of William D. Young to have said land sold for partition, and a tract of land bounded on the north by Clear Fork River, east by Hoover, south by Clear Fork River and west by M. L. Wright and Downs Branch, containing 300 acres, more or less, was sold by order of said chancery court and purchased by defendant S. H. Beaty, and a deed was executed and recorded in October, 1919. This boundary covers the land in controversy, except the Harrison possession, but the Young possessions were not kept up after S. H. Beaty purchased it.

On November 4, 1922, S. H. Beaty sold the merchantable timber on said tract to defendant Wince Owens and others, who soon thereafter began to cut the timber, and this suit was instituted with the result above stated.

The facts of the case have been poorly developed and no surveys or maps showing exact locations of the various tracts, interlaps and possessions, have been made or filed, hence a great deal of needless work has been forced upon the court in order to obtain any definite knowledge of the situation. The Chancellor should order a survey and maps to be made in such complicated cases.

Complainants' first assignment of error is that the Chancellor erred in allowing the cross-bill to be filed, as the bill was filed to protect possession and enjoin trespass, on the authority of the case of Lieberman v. Clark, 114 Tenn., 117, and the cross-bill therefore injected a new cause of action.

After an examination of the authorities, we think the Chancellor did not err in allowing the cross-bill to be filed.

At common law, in an action of trespass quare clausum fregit, the defendant might justify under the plea of liberum tenementum,

by which the question of title was put in issue, and this is not changed by our statutes in reference to forcible entry and detainer. See Roberts v. Tarver, 1 Lea, 441; Douling v. Hickman, 4 Hayw., 170; 38 Cyc., 1048; 1093-4.

A cross-bill may well be based on any proper matters of equity growing out of the original bill, or connected with it, on which the respondent might be entitled to affirmative relief, (Odom v. Owen, 2 Bax., 446); or to obtain full relief between the parties, and a complete determination of all controversies which arise out of the matters charged in the original bill; and where the title and possession of real estate is involved, in order to prevent a multiplicity of suits, a court of equity, whenever it assumes jurisdiction of the parties and the subject matter, will entertain a cross-bill so as to do complete justice between the parties. Morrison v. Morrison, 140 Ill., 560; 30 N. E., 768; 6 Stand. Ency. Proc., 263-6.

In an action to quiet title, or to remove a cloud from a title in which defendant's title is assailed, it is proper for defendant to assert his title in a cross-bill and thereby litigate and have determined all matters affecting the title to the property. Gibson's Suits in Chy., 2nd Ed., sec. 730, sub. 2; Kraus v. Thomas, (Ind.), 96 N. E., 12; Greenwalt v. Duncan et al., 16 Fed., 612; Remer v. McKay, 38 Fed., 164; 6 Stand. Ency. Proc., 300.

We are of the opinion that when one files a bill to protect possession and to enjoin trespass, and to recover damages for timber cut, and the defendant claims title and the right to possession, he has a right to file a cross-bill in ejectment setting up the title in himself and the right to possession, as the title to the timber is involved, and a complete determination of all the controversies should be had in order to prevent a multiplicity of suits. Hence this assignment of error is overruled.

The second assignment is that the Chancellor erred in dismissing the original bill, because the complainants owned the land, having acquired title by fifty-two years of continuous, adverse possession by and under George W. Beaty and his vendees, and were in the exclusive possession when the trespass was committed, which was known by defendants to be adversely held when they entered, and that the alleged interlap as now claimed by defendants had its inception with the deed from the chancery court to S. H. Beaty in 1919, long after complainants' title had been perfected, therefore possession on the interlap was not acquired by defendants and they cannot limit the extent of their constructive possession by subsequently restricting their own boundaries so as to leave out complainants' actual possession and thus acquire title.

The third assignment is that the court erred in sustaining the cross-bill for the reasons set out in the second assignment, and be-

cause cross-complainants failed to show title to the land in dispute, or to show what specific interest they owned, if any, as they failed to show that William D. Young was the only heir of John Young, the grantee.

We will treat these two assignments together as they involve the title and the right of possession to the land in controversy, which are the determinative questions in this suit.

After an examination of the whole record we are of the opinion that complainants had no title to the land in controversy, either through a connected chain of title back to the State, or by adverse possession.

William I. Beaty claimed title to the Entry No. 999 by virtue of the certificate of survey, but there is no proof as to what possessions he had, or the time or extent of his possessions, or whether he held possession adversely to any one. The proof shows that his son, George W. Beaty lived on the land and had some possessions for many years, at least from 1872 to sometime about 1884, and "claimed some land," but the extent of his possessions are not shown nor is the extent of the boundary anywhere shown. It is shown that his father William I. Beaty transferred all his right and interest in the tract with the right to obtain the grant, but it is not shown when this transfer was made, except that it was recorded on April 16, 1881, and we have no way of ascertaining when he obtained the transfer and to what extent he held adverse possession, but on October 15, 1884 he sold 437 acres, described, which covered the land in controversy, to James N. Clark, and reserved therefrom his homestead and farm to include his fields, containing seventy acres, where he then lived, hence after. that his possessions were restricted to his reservation. Where a party conveys a part of the tract and holds adverse possession of the remainder for twenty years, a grant will be presumed for the part adversely held, but not for that part conveyed, as he has no possession of that conveyed. See, White v. Lavender, 5 Sneed, 648; Stewart v. Harris, 9 Humph., 714.

There is no proof that he held possession for Clark, Gernt or Harrison, or that they ever had any possessions on this land, other than the pretended possession of two or three acres by Will Beaty for Harrison, which is not sufficient, under the statute, to give Harrison a title or possessory right by adverse possession, for two reasons: first, because G. E. Harrison did not acquire his deed for this property until July 7, 1917, and there is no proof as to the length of time of the possession, except that one witness stated that he guessed the possession was kept up somewhere about eight or ten years; and second, the proof does not show that the possession was adverse to the extent of Harrison's boundary. All the proof shows is that Will Beaty went into possession under John C. Wright on another tract

known as the Buck title, a tract situated west of the land in controversy, and held possession for Wright. During that holding he extended his enclosures across the line over on the land claimed by Harrison, and after Harrison found this extension, "he made arrangements with Will Beaty to hold that part of the lap for him." Neither Harrison nor Will Beaty testified anything at all about this adverse possession, and the foregoing facts are shown by only one witness who stated that he understood that to be true. This is the extent of the proof about the possession, which we hold is insufficient to establish adverse possession.

"The doctrine of adverse possession is to be taken strictly, and must be made out by clear and positive proof and not by inferences, every presumption being in favor of a possession in subordination to the title of the true owner." See, Zuccarello v. Erwin, 2 Tenn. App. Rep., 491; Drewry v. Nelms, 132 Tenn., 254; Southern Coal Co. v. Schwoon, 145 Tenn., 191, 239 S. W., 398.

"The possession of a tenant is circumscribed by the boundaries of the lease." 8 Michie's Tenn. Ency. Dig., 644-6; Shannon's New Code, 4451, Note 11.

It is not contended that Laban Riseden ever held adverse possession, and C. P. Beaty has had no possession of the land in controversy, except the little strip of land twenty or thirty yards wide by 300 yards long, where he extended his field across the compromise line in 1920 after he had obtained his deed from Laban Riseden in 1919. His possessions of seventeen years of the other land under his father's deed cannot help him; hence we hold that complainants have no title to the land in controversy.

Now with respect to cross-complainants' title, John Young obtained the legal title to the 1500 acres by virtue of his Grant No. 12130 in 1858, notwithstanding the previous Entry No. 999. His son, William D. Young went into possession, cleared about 100 acres and lived on it for about sixty years, and after his death, a part of this grant, assessed to W. D. Young's heirs, was sold for its taxes and purchased by his son Alvin Young and P. A. Taylor, and the deed was executed and recorded on July 23, 1909. They kept up the old W. D. Young possession of the house and cultivated the field in corn up to the year that it was sold in chancery court to S. H. Beaty in 1917, when the possessions were abandoned after Beaty purchased it. The heirs of W. D. Young filed a bill to sell said land for partition, when it was purchased by S. H. Beaty, hence the tax deed was evidently treated as a redemption of the property as the sale was not resisted by Alvin Young or P. A. Taylor. It is not shown whether Alvin Young and P. A. Taylor held possession for themselves or for the Young heirs, nor whether it was such as to constitute adverse

possession within the law. However, S. H. Beaty obtained the legal title to the interest of W. D. Young's heirs by the partition sale. If William D. Young had the legal title to the whole tract, then S. H. Beaty obtained it and he has a right to maintain' ejectment, irrespective of the restriction of the boundary by the Clerk and Master's deed, which left out G. E. Harrison's possession, as complainants and their vendors had not perfected their title by adverse possession or otherwise.

But it is insisted by appellants that it was incumbent on cross-complainants to show what specific interests they own, if any, and a general decree that they own the interest of William D. Young's heirs without showing what interest, is improper.

The proof fails to show whether William D. Young was the only child and heir-at-law of John Young, and it is claimed that the burden was on cross-complainants to show this.

A tenant in common may recover his interest in ejectment, but not the whole tract. See, 4 Michie's Tenn. Ency. Dig., 585-6; Williams v. Coal Creek Mining Co., 115 Tenn., 578, 93 S. W., 572; 10 Am. & Eng. Ency. of Law, 2nd Ed., 512.

The burden of proof in ejectment is upon complainant to establish the allegation of his bill. See, Scott v. Taylor, 46 S. W., 358.

Where a plaintiff claims by descent, he must prove his heirship, and must also show the extinction of all rights of those entitled before him. In other words, the plaintiff must show that he is the only heir or, if not, the number of heirs, in order to recover a proportionate interest in the land. 19 C. J., 1183, sec. 254; Morgan v. Fox, 4 Bibb (Ky.), 565; Kelso v. Stigar, 75 Md., 376, 24 Atl., 18; Hunt v. Payne, 29 Vt., 172; 70 Am. Dec., 402; Dupon v. McLaren, 63 Ga., 470; Cook v. Sinnamon, 47 Ill., 214; Hudson v. Vaughn, 40 So. Rep., 757 (Ala.).

In this case all that the proof shows is that John Young is dead and that William D. Young was his son. There is no proof that John Young had other children, nor is there any proof that William D. Young was his only heir-at-law. The burden of proof is on the cross-complainants to show this fact, and to this extent the third assignment of error is sustained, but the second and third assignments of error, with this exception, are overruled.

The fourth assignment of error is that the Chancellor erred in not specifically finding that the Grant No. 12130 to John Young covered all the land and improvements claimed by complainants, and that the interlap as now claimed had its inception with the Clerk and Master's deed to S. H. Beaty, which was long after complainants' possession was acquired, and after the dates of the deeds under which complainants' claimed.

On the first proposition we are of the opinion that said grant covers all of the land and improvements claimed by complainants, and especially the land in controversy, but as we view it this cannot help the appellants.

On the second proposition that the interlap, as now claimed, had its inception with the Clerk and Master's deed to S. H. Beaty after the possessions were acquired and after the deeds under which complainants claim were executed, we are of the opinion that the Youngs had the legal title to the whole Grant No. 12130, except the seventy acres reserved by George W. Beaty, the title to which he had acquired by adverse possession. Hence in the view we take of the proposition this part of the assignment is immaterial, as complainants had acquired no legal title by adverse possession or otherwise, except to the seventy acres reserved. Of course as a legal proposition one cannot sit by and let another acquire the title to a tract of land by adverse possession and afterwards restrict his boundaries so as to leave out the possessions and claim title to that part not actually enclosed, but as we view it, this proposition cannot help the complainants as they had acquired no title by adverse possession. Hence this part of the assignment is overruled.

The fifth assignment of error is that the court erred in finding as a fact that the compromise in the case of C. P. Beaty v. Alvin Young and P. A. Taylor "was made as to the land now in question," because Alvin Young and P. A. Taylor were then claiming under their tax deed, and it is not shown just what land that tax deed covered. C. P. Beaty was then claiming only a twenty-five-acre tract under a deed from his father, whereas he now claims under a deed from Laban Riseden. At that time the G. E. Harrison title, covering the same land, was in no wise involved in the compromise.

Alvin Young and P. A. Taylor's tax deed covered the land in controversy, and in that suit C. P. Beaty was then claiming only twenty-five acres under a deed from his father, but by the compromise he released all interest in the land north of a compromise line. After the compromise he obtained a deed from Laban Riseden and extended his possessions across that compromise line so as to take in the small strip. Hence we are of the opinion that the compromise of that case was made as to the land now in question in so far as C. P. Beaty was concerned. But an after-acquired title will inure to the benefit of the vendee only where the vendor warrants the title. See, Mining Co. v. Ross, 80 Tenn., 1; Ferguson v. Prince, 136 Tenn., 543, 190 S. W., 548. However we think this assignment raises an immaterial issue and is not determinative of any issue in the case. The question of estoppel is not raised on appeal. Hence this assignment is overruled.

The sixth assignment of error is that the court erred in holding that the possession consisting of a portion of the C. P. Beaty field extended across defendants' boundary line was too insignificant to operate as a possession of the land in dispute. We are of the opinion that this possession was sufficient for complainants to have constructive possession to the extent of their boundaries, but we having held that the cross-bill may be filed in this cause and titles set up, this assignment is therefore immaterial, hence it is overruled.

The seventh assignment of error is that the court erred in finding that there was no grant issued on the survey of the Entry No. 999 to William I. Beaty under which complainants claim, because possession of the land was held for more than twenty years from which the law presumed a grant. This assignment is overruled for the reasons hereinabove stated, as George W. Beaty and his vendees did not have twenty years adverse possession of the Entry No. 999.

The eighth assignment of error is that the court erred in taxing the complainants with the unadjudicated costs of the cause. This assignment is sustained for the present, as the case must be remanded, and the adjudication of the cost will await the final determination of the suit.

A part of the third assignment of error having been sustained because cross-complainants failed to show that William D. Young was the only heir-at-law of John Young, and we having held that cross-complainants owned the legal title to William D. Young's heirs interest, we are of the opinion that the case should be remanded to the chancery court of Fentress county for the purpose of ascertaining whether William D. Young was the only heir of John Young, and the exact interest owned by complainants.

The old cases above cited, from other States, hold that in ejectment cases, they being common-law actions, the plaintiff must show that he is the only heir, or if not, the number of the heirs, and in order to recover a proportionate interest in the land, it was necessary that plaintiffs show what that proportionate interest was, hence if he did not show his exact interest his action must be dismissed; but under our statute, Shannon's Code, 4509, where it appears from the record presented that more satisfactory evidence can probably be obtained upon the question presented for decision, if produced, such evidence will enable the court to come to a more satisfactory conclusion, the cause will be remanded for such additional proof in order that justice be done. See Shannon's New Code, sec. 4905, Note 38; Sartain v. Dixie Coal and Iron Co., 150 Tenn., 633, 658, 266, S. W., 313.

It has been held that the Supreme Court may pass on the issues presented and sustained by the evidence, and remanded for further evidence on other issues not decided, where evidences on such issues

is lacking. See Utley v. Railroad, 106 Tenn., 248, 61 S. W., 84; Caesar v. Harris, 108 Tenn., 653, 69 S. W., 731; Smyth v. Carden, 1 Swan, 27; Smith v. Carter, 16 Lea, 528.

In the latter case the Supreme Court dismissed the original bill and sustained the cross-bill, and remanded the case for proof as to the value of two lots so as to allot homestead of the value of $1000 in both.

Hence the cause is remanded to the chancery court of Fentress county for proof of the heirs-at-law of John Young, and whether William D. Young was the only heir-at-law of John Young. If he was the only heir-at-law then S. H. Beaty has title to all the lands in controversy, except the seventy acres reservation held by George W. Beaty and C. P. Beaty, but if there were other heirs of John Young then S. H. Beaty will recover his proportionate interest, and a decree will be entered accordingly. The cost of the appeal is adjudged against cross-complainants S. H. Beaty and Wince Owens, for which execution may issue; but the cost of the cause will await the final termination of the case in the court below.

## OPINION ON PETITION TO REHEAR.

Appellants have filed a petition for a rehearing on two grounds:

(1) It is insisted that the court should not permit a cross-bill in ejectment to be filed in a possessory suit.

(2) That in the event the cross-bill was proper, then the case should be remanded that complainants may develop their case, as they were taken by surprise.

After an examination of the record and the authorities, we think the petition should be denied.

On the first proposition, we think the reason given in our opinion are sufficient. Where one files a bill to protect possession and to enjoin trespass, and to recover damages for the value of timber cut, the title to the timber cut and the possession of the land are involved. If the valid, legal title of the property is in the defendants, it should be a good defense, and there can be no sense in requiring an independent suit, when they can get quicker and more effective relief in the same suit with less expense. Why resort to a circuitous route when a direct course is as equally effective?

On the second proposition, we think the parties should have developed their case in the court below. They give no reason other than that they thought the court would not permit the cross-bill to be filed and hence they are surprised at the court's action. The Chancellor permitted the cross-bill to be filed and then continued the case for defense and proof; hence we cannot see how the complain-

ants were surprised. They thought he was in error and took a chance and lost. No one is to blame other than themselves. They had all the time necessary to have developed their case, and we have no assurance that the facts, if further developed, would be other than as now shown in the record; hence the petition is denied.

Faw, P. J., and DeWitt, J., concur.